## Pane *v.* Department of Highways, Appellant.

Argued May 3, 1966. Before Bell, C. J., Mus-
manno, Jones, Cohen, Eagen and Roberts, JJ.

*George R. Specter,* Assistant Attorney General, with
him *Robert W. Cunliffe,* Assistant Attorney General,
*John R. Rezzolla,* Deputy Attorney General, and *Walter*

*E. Alessandroni,* Attorney General, for Commonwealth, appellant.

*Pasco L. Schiavo,* for appellees.

OPINION BY MR. JUSTICE JONES, September 27, 1966:

This appeal presents an interesting question: is the Commonwealth of Pennsylvania, in the absence of an actual "taking" of property, liable for consequential damages where a plan for the widening and change of grade of a highway was duly filed prior to the passage of the Eminent Domain Code of 1964 [1] (the Code), but where the actual widening of said highway and the change of grade,—as the result of which a property abutting the highway sustained damages—was not undertaken until after the effective date of the Code?

For approximately 18 years, Philip Pane and Mary Pane, his wife, have been the owners of property—279 feet along the highway and 380 feet in depth—which abuts upon Route 29 [2] in Sugarloaf Township, Luzerne County. On July 10, 1963, the Commonwealth of Pennsylvania, acting through its Department of Highways and in accordance with a plan signed by the Governor, authorized the widening and change of grade of Route 29. [3] Under this plan, the highway was to be widened from a two-lane to a four-lane highway and, at the point where Panes' property abuts the highway, the grade of the highway was to be raised eight to ten feet. No portion of Panes' property was to be "taken" under this plan. Actual construction of the highway, with the resultant widening and change of grade, was

---

[1] Act of June 22, 1964 (Special Session), P. L. 84, No. 6, art. I, §101 et seq., 26 P.S. §1-101 et seq.

[2] Actually, Legislative Route 184 but known locally as Route 29.

[3] This plan was recorded in the office of the Recorder of Deeds of Luzerne County on March 13, 1964.

not undertaken until the early part of 1965, approximately six months subsequent to the effective date of the Code.

On August 10, 1964, Panes, claiming that the widening of the highway and the change of grade had caused an "injury" resulting in damage to their abutting property,[4] petitioned the Court of Common Pleas of Luzerne County for the appointment of a board of viewers and a board of viewers was appointed. On November 10, 1965, the board of viewers, after a hearing, awarded $10,000 damages to Panes. From that award the Commonwealth appealed and the Court of Common Pleas of Luzerne County affirmed the award of the board of viewers. From that order this appeal has been taken.

Before the board of viewers and in the court below the Commonwealth maintained that, since there was no actual "taking" of Panes' property and since the damages claimed were consequential in nature, Panes had no cause of action because the Code—which for the first time permitted the recovery against the Commonwealth of consequential damages [5] in the absence of a "taking" of property—was not applicable to the present proceeding. The Commonwealth's position is based squarely upon its construction of the language of the Code.

Prior to the passage of the Code, the Commonwealth was not liable for damages arising from the exercise of its power of eminent domain unless there had been an actual "taking" of property: *Anderson*

---

[4] Panes claimed that the new construction caused permanent interference with their access to the highway and other damage.

[5] "Consequential damages arise when property is not actually taken or entered but an injury to it occurs as the natural result of an act lawfully done by another.": *Soldiers and Sailors Memorial Bridge*, 308 Pa. 487, 490, 162 A. 309; *Ewalt v. Pennsylvania Turnpike Commission*, 382 Pa. 529, 533, 534, 115 A. 2d 729.

*Appeal,* 408 Pa. 179, 181, 182 A. 2d 514; *McCrady Case,* 399 Pa. 586, 592, 160 A. 2d 715. In *Anderson Appeal,* supra, we said: "It has long been the established rule that absent an act of the legislature expressly imposing liability, the Commonwealth is not liable for consequential damages to land where there is no actual physical taking: [citing authorities]." (at p. 181). The legislature, by the enactment of §612 of the Code, has now supplied the legislative deficiency pointed out in *Anderson Appeal,* supra; §612 expressly imposes liability on the Commonwealth for certain damages to abutting property [6] even though there has not been an actual "taking". Section 612 provides: "Consequential Damages. All condemnors, including the Commonwealth of Pennsylvania, shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with access thereto, or injury to surface support, whether or not any property is taken." The issue which this appeal presents is whether §612 is applicable to the present proceeding.

The Code provides (art. III, §302, 26 P.S. §1-302) that: "Effective Date. This act shall take effect immediately upon approval, and shall apply to all condemnations effected thereafter, except the provisions of Article IV,[7] which shall not take effect until September 1, 1964, and shall apply to all condemnations effected thereafter. The provisions of Articles V[8] and VII[9] shall also apply to all steps taken subsequent to the effective date of this act in all condemnation pro-

---

[6] Absent an actual "taking", there is still no liability on the part of the Commonwealth to non-abutting property owners or for damages not delineated in §612.

[7] Article IV outlines the *procedure to condemn.*

[8] Article V outlines the *procedure for the determination of damages.*

[9] Article VII outlines *the evidence* competent for the establishment of damages.

ceedings in which the condemnation was effected prior to the effective date of this act." The Code was approved by the Governor on June 22, 1964.

It is evident, by reason of the language of §302, supra, that the responsibility of the Commonwealth for "consequential damages" under §612 is limited to condemnations which were effected *after* June 22, 1964. The legislature has clearly stated that *all* the Articles in the Code, except Article IV, should become effective as of the date of approval of the legislation, to wit, June 22, 1964, *and* apply to all condemnations effected thereafter, and that Article IV should become effective September 1, 1964; moreover, that, as of September 1, 1964, all the Articles would be in effect and would apply to all condemnations effected thereafter. The legislature then *specifically* provided that two Articles of the Code—Articles V and VII—should be retroactive and should apply to condemnations effected prior to June 22, 1964, but made no mention of any retroactive effect to be accorded Article VI wherein is contained the provision for "consequential damages."

In determining whether Article VI, of which §612 is a part, should be applied retroactively we must bear in mind certain well settled principles of statutory and case law: (a) "No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature": Statutory Construction Act, Act of May 28, 1937, P. L. 1019, §56, 46 P.S. §556; *Commonwealth v. Scoleri*, 399 Pa. 110, 132, 133, 160 A. 2d 215, cert. den'd 364 U.S. 849, 81 S. Ct. 93; *Creighan v. Pittsburgh*, 389 Pa. 569, 574, 132 A. 2d 867; (b) "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit": Statutory Construction Act, supra, §51, 46 P.S. §551; *Commonwealth v. Rieck Investment Corporation*, 419 Pa. 52, 59, 213 A. 2d 277; *Davis v. Sulcowe*, 416 Pa. 138, 143, 205 A. 2d

89; (c) the mention of a specific matter in a general statute implies the exclusion of others not mentioned: *Cali v. Philadelphia,* 406 Pa. 290, 305, 177 A. 2d 824 and authorities therein cited. Applying these principles to the instant situation, §302 of the Code reveals no intent on the part of the legislature to render retroactive any portion of the Code save Articles V and VII; the words of the Code are clear and free from ambiguity; the specific language of the enactment which renders Articles V and VII specifically retroactive but makes no mention of any other Article being retroactive would imply that Article VI was not intended to be retroactive.

In our view, under the unequivocal language of §302, Article VI, which includes §612, was not intended to be retroactive so as to encompass *condemnations effected* prior to the effective date of the Code.[10] Were this all that was involved in the case at bar we would have no hesitancy in determining that §612 was inapplicable in the instant proceeding.

In the case at bar, the Commonwealth in 1963 filed a Governor-approved plan which authorized the widening and change of grade of Route 29. This plan was properly filed and recorded, under the provisions of the Act of June 1, 1945, P. L. 1242, §210, as amended, 36 P.S. §670-210. The recording of this plan constituted constructive notice to the property owners although the record undisputedly indicates that the property owners received no actual notice until actual construction of the highway took place almost a year after the plan was recorded.

The real crux of this controversy is whether, under §302 of the Code, a *condemnation* had been *effected* prior to the effective date of this Code insofar as Panes' property is concerned. Stated otherwise, was Panes'

---

[10] See *Wilkes-Barre v. Rubel,* 36 Pa. D. & C. 2d 797.

property "condemned" when the Commonwealth filed its plan on July 10, 1963, or when the physical work began on the highway in 1965?

We must initiate our inquiry by seeking to ascertain what the legislature meant in §302 by the phrase "condemnations effected". Section 201(1), which defines the word "condemn" as meaning "to take, injure or destroy private property by authority of law for a public purpose", makes clear that a "condemnation" is the act of taking, injuring or destroying private property by authority of law for a public purpose.

Prior to the Code, *where there was an actual "taking" of property,* a condemnation was *effected* when the right-of-way plans or construction drawings, prepared by the Department of Highways and approved by the Secretary of Highways and the Governor, was filed as a public record in the office of the Department of Highways: Act of June 1, 1945, P. L. 1242, §208, 36 P.S. §670-208; *Department of Property and Supplies v. Rhoads,* 378 Pa. 603, 607, 107 A. 2d 868; *Smith v. Commonwealth,* 351 Pa. 68, 40 A. 2d 383. Under the Code, a condemnation which involves the "taking" of property is "effected" only by the filing in court of a "declaration of taking" with the required security; Code, supra, §402, 26 P.S. §1-402.

In the case at bar, however, we have a situation wherein a property has been damaged by "injury" without a "taking". Shall the filing of a plan prior to the effective date of the Code be considered as a "condemnation effected" before June 22, 1964? We think not.

For over nine decades, municipal and other corporations, invested with power to exercise eminent domain, have been subjected to liability for consequential damages. Prior to the Constitution of 1874, municipal and other corporations were not liable for consequential damages but Article XVI, §8 of our Pennsylvania Con-

stitution provided that: "Municipal and other Corporations . . . invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed". Following the imposition of liability on such corporations for consequential damages our courts were called upon to determine *when*, in the absence of a "taking" of property, the "injury" took place which gave rise to a cause of action for consequential damages.

The teaching of the case law considering the time *when* an "injury" takes place so as to give rise to a cause of action for consequential damages against municipal corporations is that it is not the time of the municipal action in establishing the grade of a street or the municipal declaration of the intent to grade the street at some time in the indefinite future but that time when the physical change is begun which gives the right of action. Whether it be for the purpose of determining who is entitled to the damages or whether the statute of limitations has tolled an action, the time when an "injury" or "damage" is deemed to have been incurred is not the time of the "constructive" or "paper" appropriation but the time the work is actually undertaken. See *O'Brien v. P.S.V.R. Co.*, 119 Pa. 184, 13 A. 74; *Change of Grade in Plan 166*, 143 Pa. 414, 22 A. 669; *Ogden v. Philadelphia*, 143 Pa. 430, 22 A. 694; *Sedgely Avenue. Lehigh Avenue*, 217 Pa. 313, 66 A. 546; *Pennsylvania Range Boiler Co. v. Philadelphia*, 344 Pa. 34, 23 A. 2d 723; *Thirteenth Street*, 38 Pa. Superior Ct. 265; *Griffin v. City of New Castle*, 88 Pa. Superior Ct. 439; *Costello v. City of Scranton*, 108 Pa. Superior Ct. 573, 575, 165 A. 670; *Butler County Commrs' Petition*, 141 Pa. Superior Ct. 597, 15 A. 2d 504; P.L.E., Vol. 13, Eminent Domain, §62, p. 291. As this Court said in *Penn. R. Co. v. Lippincott*, 116 Pa. 472, 485, 9 A. 871: "Any other rule would lead to this remarkable result, that the plaintiffs would be entitled

to damages without having suffered any injury; that is, for anticipated damages, and for which a natural person could not be held liable."

There is a presumption that the legislature, in enacting laws on the same subject matter after a court of last resort has construed statutory language, intended the same construction to be placed on such language: Statutory Construction Act, supra, §52, 46 P.S. §552; *Jones and Laughlin Assessment Case,* 405 Pa. 421, 432, 433, 175 A. 2d 856; *Parisi v. Philadelphia Zoning Board of Adjustment,* 393 Pa. 458, 462, 143 A. 2d 360. The language, except as to tense, "taken, injured or destroyed" in Article XVI, §8 of our Constitution extending liability for consequential damages to municipal or other corporations is identical to the definition of "condemn" under §201(1) of the Code. There is no sound reason why the effective date of an act of condemnation in the case of damages resulting from "injury" to property under §612 of the Code should be interpreted differently than the effective condemnation date under the constitutional provision; if so interpreted, there was no "condemnation effected" in the case at bar until the physical work of construction was begun and, since such took place after June 22, 1964, §612 should be applicable.

The common sense of holding that the cause of action of an abutting owner seeking consequential damages for damages arising from an "injury" to property under §612 arises not from the filed plan with its "paper grade" but from the actual work undertaken under the plans is evident. In the first place, the damages which an abutting owner may recover as consequential must be proved; such proof must not be of a speculative or remote nature but, rather, of actual damages incurred: *Ogontz Avenue,* 225 Pa. 126, 73 A. 1096. If the plan, as outlined on paper, projects future "injury" to the abutting owner's property, the owner

cannot then with any degree of certainty evaluate the extent of this "injury" but must await the occasion of any "injury" after the work under the plan has been begun. It is not the projected plan which causes the damage; it is the work pursuant to the plan which causes the "damage" and, until such work has been begun, the nature and extent of the damage cannot be evaluated. In *Sunbury E. R. R. Co. v. Hummell*, 27 Pa. 99, Mr. Justice Lowrie, speaking for this Court, said: "It is unreasonable to ask intelligent men to make a sworn estimate of a mere risk, which can be founded on no present data, but only on an imaginary state of things which may never exist, or which may come complicated with other things which may totally change their character;" (at p. 107). In the second place, if we pinpoint the date of filing the plan as the date of the condemnation at which the statute of limitations begins to run, and, if the actual work under the plan is not begun for years after the plan was filed,[11] the property owner finds himself in a dilemma; if he starts suit before the actual work has begun, his damages are speculative whereas if he delays suit until the work is begun he may find himself barred by the statute.

The Code itself does not define or indicate what the legislature meant by the phrase "condemnations effected" prior to the effective date of the Code.[12] The only logical and practical solution is to apply the statutory and case law prior to the Code in determining whether a condemnation has been "effected" prior to

---

[11] Cf. *Henry v. Allegheny County*, 403 Pa. 272, 169 A. 2d 874; *Hirsch v. North Braddock Borough*, 252 Pa. 22, 97 A. 113; *Griffin v. City of New Castle*, 88 Pa. Superior Ct. 439.

[12] The Code, under Article VI, §402(a), provides that a condemnation is effected only by the filing in court of a declaration with requisite security. However, that section, which did not become effective until September 1, 1964, does not aid in defining a "condemnation effected" prior to the Code.

June 22, 1964. As we have previously noted, where the Commonwealth of Pennsylvania, acting through its Department of Highways, has filed its plan which involves the "taking" of property, then the date upon which the plan was filed is the date upon which the condemnation is effected. Where the Commonwealth under the plan does not "take" property but the work contemplated under the plan will involve an "injury" to an abutting property owner, then, by analogy to the case law applicable to municipal or other corporations having the power of eminent domain, the date upon which a condemnation shall be deemed effected should be the date when the work shall have been begun, i.e., when the "injury" shall have actually occurred. Applying such rule there was no injury effected in the case at bar until 1965 at which time §612 was in effect.

In summary, Article VI, §612 is not retroactive so as to apply to condemnations effected prior to June 22, 1964. However, since the injury in the instant situation was not effected until after the effective date of Article VI, §612 is applicable to this proceeding.

Order affirmed.

Mr. Justice ROBERTS concurs in the result.