In re T.J.

**Appeal of CITY OF PHILADELPHIA. The County Office of Mental Health/Mental Retardation.**

Superior Court of Pennsylvania.

Argued May 14, 1997.

Filed Aug. 19, 1997.

William S. Braveman, Philadelphia, for appellant.

Karl Baker, Assistant Public Defender, Philadelphia, for appellee.

Before CIRILLO, President Judge Emeritus, and TAMILIA and SAYLOR, JJ.

CIRILLO, President Judge Emeritus:

This motion to quash is in response to an appeal from a February 5, 1997 order denying appellant's, the City of Philadelphia, County Office of Mental Health/ Mental Retardation (MH/MR), petition for review pursuant to 50 P.S. §§ 7102, 7109, 7301–7303. Appellant's petition sought review of the October 22, 1996 order, issued by the Mental Health Review Officer (MHRO), that denied appellant's petition to extend the commitment of the appellee, T.J., and, instead, discharged T.J. from involuntary treatment.

T.J. has filed this motion to quash based upon two grounds. First, T.J. argues that the issue on appeal is moot.[1] Second, she contends that section 7109 of the Mental Health Procedures Act (MHPA), 50 P.S. § 7109, "creates no right of review by the government from a decision of a MHRO discharging a petition for involuntary treatment." We disagree with T.J. on the issue of mootness. We find, however, that appellant lacks standing to petition for review. We, therefore, grant the motion to quash.

On October 18, 1996, T.J. was involuntarily committed to Misercordia Hospital for a period not to exceed 120 hours, pursuant to section 7302 of the MHPA. *See* 50 P.S. § 7302. On October 22, 1996, Misercordia Hospital, with the support of T.J.'s husband and sister, filed a 303 petition[2] requesting that the MHRO extend T.J.'s involuntary commitment for a period not to exceed 20 days.[3] T.J. moved to have the petition discharged, claiming that there was insufficient evidence to prove she should be involuntarily committed according to a clear and present danger standard.[4]

At the hearing, counsel for Petitioner requested an opportunity to offer into evidence additional facts of T.J.'s conduct. These facts were not set forth in the original 303 petition, but would allegedly establish that T.J. was a clear and present danger to herself and/or others. The MHRO denied the request and rendered a decision to discharge T.J. based exclusively on the information presented in the 303 petition.

Appellant filed a petition for review in the court of common pleas alleging that the MHRO erred in excluding evidence and further erred in granting the motion for discharge. T.J. then filed a motion to quash the appeal in the court of common pleas and asserted that the issue was moot and that MH/MR Office did not have the right to petition for review of the decision. The common pleas court denied both appellee's motion to quash and appellant's petition for review. Appellant subsequently filed an appeal in the Superior Court. It is from this appeal that T.J. has filed a motion to quash, again asserting that the MH/MR Office's appeal is a moot issue and unauthorized by law.

Initially, we find that the appeal before this court is not moot. A case is "moot" when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controver-

---

1. The issue on appeal is whether the MHRO erred in granting the motion to discharge T.J., where the MHRO refused to allow into evidence additional facts regarding T.J.'s conduct within the thirty (30) days prior to her hearing. *See* 50 P.S. § 7301(b).

2. The section 303 petition refers to the Mental Health Procedure Act § 7303. 50 P.S. § 7303. This petition for extended involuntary emergency medical treatment may be made for any person who is undergoing treatment pursuant to section 7302. The petition "shall be filed forthwith in the court of common pleas, and shall state the grounds on which extended emergency treatment is believed to be necessary." *Id.*

3. The petition included allegations that T.J.: 1) was refusing to eat food, claiming that the food was poisoned, and as a result had lost 30 pounds in a month; and 2) was not able to care for her three children and had left the children alone in the house because she claimed that she was hearing voices which told her to leave the house.

4. A person is severely mentally disabled warranting involuntary treatment if the person presents "a clear and present danger of harm to others or to himself." 50 P.S. § 7301(a). The clear and present danger standard mandates that the petitioner show that the patient, within the past 30 days, manifested conduct which caused injury to oneself or another.

sy. *Sonder v. Sonder,* 378 Pa.Super. 474, 520–22, 549 A.2d 155, 179 (1988)(citing *Leonhart v. McCormick,* 395 F.Supp. 1073, 1077 (W.D.Pa.1975)). Appeals presenting questions capable of repetition, however, are apt to elude appellate review and will be decided even if they are technically moot. *Jersey Shore Area Sch. Dist. v. Jersey Shore Educ. Ass'n,* 519 Pa. 398, 400, 548 A.2d 1202, 1204 (1988).

The doctrine of mootness is implicated in this case because T.J. has already been discharged from Misercordia Hospital. Nevertheless, this case is properly subject to appellate review because the procedure at issue, which is of great public concern due to implications of liberty interests, is likely to recur and equally likely to continually evade appellate review. *See In re Chiumento,* 455 Pa.Super. 376, 688 A.2d 217 (1997) (noting that although the commitment period authorized by a section 7303 hearing in question had expired, a live controversy still existed); *In re J.S.,* 387 Pa.Super. 432, 564 A.2d 468 (1989)(explaining that courts normally review MHPA commitment procedures even if the patient is discharged because the procedures, which are of great public concern, are capable of repetition and may otherwise evade appellate review); *In re Condry,* 304 Pa.Super. 131, 450 A.2d 136 (1982)(appeals from involuntary commitment orders which have expired are not moot because involuntary commitment affects an important liberty interest, and because by their nature most involuntary commitment orders expire before appellate review is possible). *See also Western Pa. Socialist Workers 1982 Campaign v. Connecticut General Life Ins. Co.,* 335 Pa.Super. 493, 485 A.2d 1 (1984)(a case that is technically moot may be decided on its merits if it involves a question that is capable of repetition but likely to evade review if normal rules on mootness were applied).

■ In the alternative, T.J. asserts that the MH/MR Office lacks standing to bring this appeal. In essence, the question of standing concerns whether a litigant is entitled to have the court decide the merits of a particular issue. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975). A litigant may obtain standing based upon explicit statutory language or by demonstrating a close relationship or personal stake in the claim made. *See* J. Barron, C. Dienes, W. McCormack & M. Redish, *Constitutional Law,* 1287 (3rd ed.1987).

T.J. contends that the MH/MR Office lacks standing because the MHPA is devoid of any language which would permit a government or agency a right to appeal a discharge petition. We find the legislature's omission of such a right significant and determinative of our decision to grant this motion to quash. We further justify our decision on the fact that the MH/MR Office has no close or personal relationship with the outcome of the litigation.

■ The MHPA establishes the rights of parties in mental health proceedings and sets forth the procedures employed therein. The legislature's purpose in enacting the MHPA was "to assure the availability of adequate treatment to persons who are mentally ill" and "to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others." 50 P.S. § 7102; *In re McMullins,* 315 Pa.Super. 531, 537–38, 462 A.2d 718, 722 (1983). The purpose behind the language of the statute is to "provide treatment with the *least restriction on liberty and freedom* consistent with protection of patient and society." *In re S.O.,* 342 Pa.Super. 215, 230, 492 A.2d 727, 735 (1985)(emphasis added). The MPHA, therefore, must be strictly construed in favor of the patient's liberty interest since involuntary commitment under the MHPA represents a substantial deprivation of a person's freedom. *See In Interest of Roy,* 423 Pa.Super. 183, 620 A.2d 1172 (1993); *In re S.C.,* 280 Pa.Super. 539, 421 A.2d 853 (1980).

It is a well settled principle of statutory construction that "when the words [of a statute] are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 46 P.S.

§ 551; *Pane v. Commonwealth, Dept. of Hwys,* 422 Pa. 489, 222 A.2d 913 (1966). Furthermore, the mention of a specific matter in a general statute implies the exclusion of other matters not specifically mentioned. *Id.* (citing *Cali v. City of Philadelphia,* 406 Pa. 290, 305, 177 A.2d 824, 831–32 (1962)); *see also Ken R. v. Arthur Z.,* 546 Pa. 49, 53–55, 682 A.2d 1267, 1270 (1996)(same).

Sections 7109(b) and 7303(g) of the MHPA expressly establish procedures by which a person subject to a petition for involuntary treatment can appeal a MHRO's ruling to the court of common pleas. Section 7109(b), which addresses the role of a MHRO, states in relevant part:

> In all cases in which a hearing is conducted by a mental health review officer, *a person made subject to treatment* shall have the right to petition the court of common pleas for review of the certification.

50 P.S. 7109(b) (emphasis added). Furthermore, Section 7303(g), which addresses court petitions for involuntary treatment, indicates:

> In all cases in which the hearing was conducted by a mental health review officer, *a person made subject to treatment* pursuant to this section shall have the right to petition the court of common pleas for review of certification.

50 P.S. § 7303(g) (emphasis added). Nowhere does the Act create a concomitant right in a government agency to petition for review of a MHRO's order. In the absence of express statutory authority, we cannot read such a right into the Act.[5] To do so would conflict with a strict interpretation of the statute's plain language, as well as contradict the rules of statutory construction precluding creation of such a right in light of the statute's silence on the matter. We are bound by the clear language of the Act, and, while the MH/MR Office considers this unilateral right to appeal unjust, we suggest that only the Pennsylvania General Assembly can amend this right.

■ Strict statutory interpretation alone does not end our standing analysis. Pennsylvania Rule of Appellate Procedure 501,[6] and extensive common law, establish that a party may have standing to challenge an official order or action so long as the party is "aggrieved" thereby. *Beers v. Commonwealth Unemployment Compensation Board of Review,* 534 Pa. 605, 633 A.2d 1158 (1993); *South Whitehall Twp. Police Service v. South Whitehall Township,* 521 Pa. 82, 555 A.2d 793 (1989). As this court has previously explained, "the core concept [of standing] . . . is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge." *Franklin Township v. Commonwealth Department of Environmental Resources,* 500 Pa. 1, 3–5, 452 A.2d 718, 719 (1982)(citing *William Penn Parking Garage v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975)).

■ In order to be "aggrieved" a party must have: 1) a **substantial** interest in the subject matter of the litigation; 2) the party's interest must be **direct**; and, 3) the interest must be **immediate** and not a remote consequence of the action. *Beers, Township,* 521 Pa. at 86–87, 555 A.2d at 795 (emphasis added). We find that the MH/MR Office of the City of Philadelphia is not an aggrieved party as it does not satisfy all three enumerated requirements. The MH/MR Office, therefore, has no standing to obtain judicial resolution of its challenge.

■ A "substantial" interest means that there must be some discernible adverse ef-

---

5. The MH/MR Office refers to *In Matter of J.S.,* 142 Pa.Commw. 493, 597 A.2d 750 (1991), which states that a common sense approach to the MHPA would allow for the Department of Public Welfare to petition for review of a MHRO's order. Unlike the Commonwealth Court, we do not find that the purpose of the MHPA would be thwarted by denying such a petition. Furthermore, since this court is not bound by a Commonwealth Court decision, we choose to follow a strict interpretation of the Act's clear statutory language.

6. Pennsylvania Rule of Appellate Procedure 501 states in relevant part, "that [any] party who is aggrieved by an appealable order . . . may appeal therefrom." Pa.R.A.P. 501.

fect to some interest other than the abstract interest of all citizens in having others comply with the law. *South Whitehall Township*, 521 Pa. at 86–87, 555 A.2d at 795 (citation omitted); *Petition of City of Pittsburgh*, 35 Pa.Commw. 18, 20–22, 384 A.2d 1020, 1022 (1978). Courts have recognized a substantial interest in cases where a close and personal relationship exists between the litigant and the outcome of the issue in dispute.[7] The litigant here, the MH/MR Office, lacks the requisite close and personal connection to the treatment status of T.J.

The specific power and duty of county MH/MR offices is "to review and evaluate the county's mental health and mental retardation needs, services, facilities and special problems . . . . To make recommendations to the local authorities regarding the [mental health/mental retardation] program . . . in the county. . . . To review performances under the mental health and mental retardation program and to recommend a system of program evaluation. . . ." 50 P.S. § 4303(a). The purpose of the office is to harmonize the needs of the mentally ill with the county programs.

The power and duty of the MH/MR Office creates neither a close nor personal relationship with mental health patients, such as T.J. In addition, T.J.'s discharge would not hinder the MH/MR Office's ability to ensure comprehensive county services for the mentally ill. Furthermore, if the MH/MR Office is dissatisfied with the result of the MHRO's order to discharge T.J., the MH/MR Office's proper remedy is "to make recommendations" to change the program. 50 P.S. § 4303(a). Any unfavorable findings, such as the county's inability to appeal a MHRO's order, should be addressed through recommendations to legislative bodies. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975). In light of the foregoing, the MH/MR Office cannot claim a substantial interest in the present matter on appeal.

■ Next, a "direct" interest requires a showing that the matter complained of caused harm to the party's interest. *South Whitehall Township, supra.* Only T.J.'s liberty interests and welfare are directly affected by the MHRO's order, not the liberty and welfare of the MH/MR Office. The MH/MR Office has failed to show that the MHRO's order has injured the Office's ability to carry out local government functions; specifically, the order does not injure the MH/MR Office's ability to ensure comprehensive treatment programs for the mentally ill of Philadelphia County. *See Township of North Fayette v. Commonwealth of Pennsylvania*, 62 Pa.Commw. 242, 436 A.2d 243 (1981) (finding that township failed to demonstrate immediate interest where alleged injury has not adversely affected its municipal responsibility to carry out local government functions). We, therefore, find that the MH/MR Office does not have a direct interest; the result of the order will in no way cause harm to the county agency.

■ Finally, an "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it. *South Whitehall Township, supra.* A person or entity has an immediate interest when the interest the party seeks to protect is within the zone of interest sought to be protected by the statute. *Id.* As iterated, the purpose of the MHPA is to ensure adequate treatment for those who are mentally ill while exercising the least restriction on a patient's liberty and freedom. *See In re S.O., supra; In re McMullins, supra.* Accordingly, the interests sought to be protected under the Act are that of T.J. These interests justify a patient's right to appeal a MHRO's order, to protect a personal liberty interest, but provide no justification for a county agency to

---

7. For example, courts have recognized a substantial interest in cases where a minor sued for visitation privileges with her half sisters, *Ken R. v. Arthur Z.*, 546 Pa. 49, 682 A.2d 1267 (1996), and where a county and township petitioned for review of an issuance of a permit for a toxic waste landfill within the boundaries of the county and township, *Franklin Township v. Commonwealth Dept. of Environmental Resources*, 500 Pa. 1, 452 A.2d 718 (1982).

appeal such an order. Not only is the MH/MR Office seeking protection of a right not provided under the MHPA, it indirectly requests that this court infringe upon the heavily protected liberty interests of a patient under the Act. We cannot sanction such an action. Accordingly, we find the MH/MR Office has no "immediate" interest.

In light of the foregoing, we find that the MH/MR Office is not an "aggrieved" party that has standing where it cannot prove a substantial, direct, and immediate interest in the outcome of the present litigation. *William Penn Parking Garage, supra.* Furthermore, we cannot recognize an agency's right to appeal a MRHO'S order where the MHPA does not expressly provide for such a right. *Ken R., supra.* Accordingly, we hold that the MH/MR Office of Philadelphia County does not have standing, and, consequently, is precluded from filing a petition for review of MHRO's order and in filing an appeal from the denial therefrom.

Motion to quash granted.