J-A01009-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: CITY OF PHILADELPHIA | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1026 EDA 2017 |

Appeal from the Order Entered February 24, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-MH-0000005-2017

BEFORE:   LAZARUS, J., OTT, J., and PLATT*, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 31, 2018**

The City of Philadelphia (the City), appeals from the order, entered in the Court of Common Pleas of Philadelphia County, denying the City's petition under section 7303 of the Mental Health Procedures Act (MHPA)[1] seeking involuntary mental health treatment for J.D., a minor.  After careful review, we affirm.

The trial court summarized its findings of fact as follows:

On February 20, 2017, J.D. was taken to the Germantown Crisis Response Center ("CRC")[,] where she was held for extended involuntary treatment to address an alleged suicide attempt.  Prior to presentation to the CRC, J.D. had called a suicide hotline on February 20, 2017[,] and informed the hotline she had ingested twenty five (25) Advil tablets.  When transported by police and fire personnel (police and fire personnel had been referred to J.D. by the suicide hotline) for emergency treatment, she informed them that she had ingested four (4) Advil.  Thereafter, on February 24, 2017, a hearing was held pursuant to 50 P.S. § 7303

---

[1] 50 P.S. §§ 7101-7503.

---

*   Retired Senior Judge assigned to the Superior Court.

to determine whether or not to extend the involuntary emergency treatment for an additional [twenty] 20 days through March 16, 2017. During the hearing, the intake physician at the CRC[, Dr. Audrey Rossowski,] testified that J.D. had told [her] that she had ingested twenty five (25) Advil and that she called the suicide hotline. [Dr. Rossowski] also testified that J.D. told [her] that she made the alleged suicide attempt after an argument with her mother. In response[,] J.D.'s counsel stated that J.D. had not tried to commit suicide; that she had not ingested 25 Advil. J.D.'s counsel elicited testimony by the intake physician that J.D.'s stomach had not been pumped nor her blood tested after the alleged suicide attempt. J.D.'s counsel stressed testimony by the intake physician on cross examination that J.D. was alert when she arrived at the CRC. Furthermore, J.D.'s mother testified that additional involuntary emergency treatment was not necessary because J.D. could go home with her and receive outpatient treatment in Chambersburg, Pennsylvania, which had already been scheduled. In addition, the living conditions at J.D.'s mother's home were superior to [those] offered by the CRC, which had no beds and where J.D. was sleeping on the floor with other children on blankets. Furthermore, it was the desire of J.D. to move back home.

Trial Court Opinion, at 2-3 (internal citations omitted).

A second treating psychiatrist, Katherine Napalinga, M.D., also testified at the February 24, 2017 hearing. Dr. Napalinga diagnosed J.D. with unspecified depressive disorder and specified anxiety disorder, and recommended J.D. receive inpatient psychiatric hospitalization for at least twenty days to give J.D. access to mental health treatment. Neither treating physician had prescribed medication for J.D., because, as Dr. Napalinga testified, they were deferring any such decision to the "accepting hospital" and treatment team there. N.T. Hearing, 2/27/17, at 25-26. However, no accepting hospital or treatment team was specified. By the time of the hearing, J.D. had been in the CRC at Germantown for seventy-two hours in a

communal space, wearing a hospital gown, where she was provided with only a blanket.

After the full hearing on February 24, 2017, the court found that further involuntary treatment of J.D. was unnecessary. The court thus denied the City's section 303 petition, and ordered J.D. be sent home with her mother to receive outpatient treatment.

The City of Philadelphia filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The City presents the following issues for our consideration:

> (1) Did [the] Family Court err by ruling that the City's appeal was moot, where this appeal presents a recurring legal question regarding what standard to apply to a judicial officer's review of expert testimony in a mental health commitment proceeding, and where the Pennsylvania Courts have recognized the need to review recurring issues in mental health commitment proceedings, even where the individual patient's case has ended well before the case appears before the appellate courts?
>
> (2) Did the Family Court err and abuse its discretion by capriciously disregarding undisputed medical expert testimony that J.D. posed a clear and present danger to herself?

Appellant's Brief, at 4.

As a general rule, the appellate courts of this Commonwealth will not decide moot or abstract questions. *See Commonwealth v. Smith*, 486 A.2d 445, 447 (Pa. Super. 1984). A case is moot when a "determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *In re T.J.*, 699 A.2d 1311, 1313 (Pa. Super. 1997), *rev'd on other grounds*, 739 A.2d 478 (Pa. 1999). However, there are

noted exceptions to the mootness doctrine, one of which applies when an issue is repeatable and likely to elude appellate review. ***Commonwealth ex rel. Kearney v. Rambler***, 32 A.3d 658, 663 (Pa. 2011); ***see also***, ***In re T.J.***, 739 A.2d at 481 n.2 ("any decision in this case will have no effect on T.J. personally. Yet, we will still review this matter as it . . . is an issue which is capable of repetition yet apt to evade review.").

Section 303 petition proceedings are subject to rapid and informal procedures under the MHPA. This procedure strikes a balance between "the state's valid interest in imposing and providing mental health treatment and the individual patient's rights." ***In re Hutchinson***, 454 A.2d 1008, 1010 (Pa. 1982). Evidence for a section 303 petition must be presented by the City within 120 hours of the initial commitment. ***See*** 50 P.S. § 7303(a). The evidence is heard at an informal hearing by a judicial officer without a jury. 50 P.S. § 7303(c). A decision must be made at the conclusion of the hearing to either certify that the patient needs further involuntary treatment, or order the hospital to discharge the patient. ***Id.*** There can be no delay. Accordingly, legal questions may appear concerning an individual section 303 petition, which may likely appear in future decisions. Because of the time-sensitive nature of section 303 petitions, and the rights of the individuals being involuntarily treated, virtually all appeals of these decisions will be technically moot.

This Court has considered involuntary treatment cases in the past. As previously stated:

> We recognize that an important liberty interest is at stake in all involuntary commitments and by their nature, most commitment orders expire prior to appellate review. *See In re Condry*, [] 450 A.2d 136, 137 ([Pa. Super.] 1982). Since a finding of mootness would allow such claims to go unchallenged in most, if not all, cases, we continue to hear these matters and, where the facts allow, we have authority to vacate a commitment order and direct that the record be expunged. *See In re S.O.*, [] 492 A.2d 727 ([Pa. Super.] 1985).

*In re R.D.*, 739 A.2d 548, 553 (Pa. Super. 1999), quoting *In re S.L.W.*, 698 A.2d 90, 92 (Pa. Super. 1997). Because claims arising from MHPA proceedings are capable of repetition and likely to evade review, we will consider the merits of the City's appeal.

The City urges us to impose a new standard of review upon the findings of judicial officers in section 303 hearings. The City suggests in its brief that a court's decision must be reversed where we find it has engaged in a "capricious disregard" of the evidence. This makes an assumption we do not find in this case.

This Court has a well-established standard of review for determinations pursuant to the MHPA, which is to "determine whether there is evidence in the record to justify the court's findings." *In re T.T.*, 875 A.2d 1123, 1126 (Pa. Super. 2005). "Although we must accept the trial court's findings of fact that have support in the record, we are not bound by its legal conclusions from those facts." *Id.*; *see also*, *In the Interest of C.L.A.*, 120 A.3d 1053 (Pa. Super 2015) (applying same standard); *In re Swartz*, 158 A.3d 190 (Pa. Super. 2016) (same); *In re S.M.*, 176 A.3d 927 (Pa. Super. 2017) (same). "[T]his Court, being an error correcting court, will affirm trial court decisions

- 5 -

which are in accord with principles of law adopted by prior appellate court decisions." **Moses v. T.N.T. Red Star Exp.**, 725 A.2d 792, 801 (Pa. Super. 1999), quoting **Aivazoglou v. Drever Furnaces**, 613 A.2d 595, 600 (Pa. Super. 1992). Thus, we will examine the evidence to determine whether the trial court's decision in this case is supported by the record. **In re T.T.**, **supra**.

Upon examining the record, we conclude that the City presented no compelling proof that J.D.'s alleged suicide attempt was anything more than J.D. "acting out after an argument with her mother." N.T. Hearing, 2/24/17, at 47. J.D. languished for seventy-two hours in a communal space for children and adults at the Germantown CRC before ever being examined by either of the doctors who testified at her section 303 hearing. Moreover, neither doctor proposed a treatment plan or identified any treatment facilities that would accept J.D. and provide her with such plan. Conversely, J.D.'s mother, in attendance at the hearing, presented the court with an outpatient treatment plan, with an appointment scheduled within days of the hearing. The trial court, sitting as finder of fact and weighing the credibility of the witnesses, was not convinced that further involuntary treatment, of up to twenty days, was necessary for J.D.[2] Nevertheless, the City argues that the trial court disregarded the "unrebutted medical expert testimony" of the physicians,

---

[2] Indeed, the stated policy of the MHPA provides that "[t]reatment on a voluntary basis shall be preferred to involuntary treatment; and in every case, the least restrictions consistent with adequate treatment shall be employed." 50 P.S. § 7102.

which constituted a "capricious disregard" of the evidence. Appellant's Brief, at 20. We disagree.

Weighing the credibility of witnesses is for the finder of fact, who is "free to accept or reject the credibility of both expert and lay witness, and to believe all, part, or none of the evidence." *Terwilliger v. Kitchen*, 781 A.2d 1201, 1210 (Pa. Super. 2001) *citing Gunn v. Grossman*, 748 A.2d 1235, 1240 (Pa. Super. 2000). This Court has found, "even if testimony is uncontradicted, the [fact-finder] is not required to accept everything or anything a party presents." *Bezerra v. AMTRAK*, 760 A.2d 56, 63 (Pa. Super. 2000) (internal citations omitted). Thus, a fact-finder may disregard any portion of testimony he deems incredible. *Martin v. Evans*, 711 A.2d 458, 463 (Pa. 1998). Here, it is apparent the trial court did not find the two doctors' uncontradicted medical testimony compelling, and the court was free to disregard any disbelieved portion of that testimony.[3]

---

[3] In this case, the trial court concluded that the City's appeal was moot and, accordingly, did not include in its opinion any discussion of the City's substantive claim. As a result, we do not have the benefit of the trial court's thoughts regarding the evidence presented or the reasoning behind its decision. Under these circumstances, appellate review is substantially hindered without the benefit of a trial court opinion. For example, the City argues that the trial court relied upon statements made by J.D.'s counsel during argument, rather than the witnesses' testimony, to arrive at its decision. Without a discussion of the merits of the issues from the trial court, it is impossible to determine the actual basis of its ruling. Thus, even if a court believes an appellate claim to be moot, the best practice is to address all issues raised by an appellant in its Rule 1925(b) statement.

Under the facts of this case, where J.D. was left completely untreated for a period of seventy-two hours,[4] and in that time her treating mental health care professionals failed to devise any treatment plan whatsoever, the trial court did not abuse its discretion in concluding that unspecified involuntary treatment for up to twenty days was not warranted, where an acceptable voluntary treatment plan was presented.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/31/18

---

[4] During her seventy-two hour involuntary emergency treatment, J.D. was placed at the Germantown Crisis Response Center, where she was housed in a common area with other children and provided with only a blanket. There were no cots or beds available. **See** N.T. Hearing 2/24/17, at 19-21. There is nothing in the record to indicate that she received any treatment while at Germantown, other than the monitoring of her vital signs, and her treating physicians provided no specific plan for further treatment in the event the court granted the City's request for extended involuntary treatment.