280 Pa. Superior Ct. 539 (1980)
421 A.2d 853
In re S.C., Respondent.
Appeal of S.C., Allegheny County Children and Youth Services, (participating party).
Superior Court of Pennsylvania.
Argued April 14, 1980.
Filed September 19, 1980.
*540 *541 Lawrence P. Galie, Pittsburgh, for appellant.
George M. Janocsko, Assistant County Solicitor, Pittsburgh, for participating party.
Before PRICE, BROSKY and MONTGOMERY, JJ.
MONTGOMERY, Judge:
The instant appeal arises from a civil commitment ordered by the Allegheny County Court of Common Pleas. The commitment order followed an initial emergency commitment under § 302 of the Mental Health Procedures Act of 1976,[1] and directed the Appellant, a minor, to undergo extended involuntary inpatient psychiatric treatment pursuant to § 303 of the Act.[2] In issuing the order, the lower court reversed a decision of a Mental Health Review Officer, who dismissed the petition for extended involuntary treatment which had been filed by the Appellee, Allegheny County Mental Health and Retardation Program (hereinafter referred to as "MH/MR"). The Mental Health Review *542 Officer apparently based his dismissal order on a finding that the § 303 petition had not been timely filed.[3] The Appellant now argues that the lower court's reversal of the Review Officer, and order extending the commitment, were erroneous.
The initial question presented by this appeal is whether the issue of the propriety of the commitment is moot either because the Appellant has been discharged from treatment or because of corrective amendments to the 1976 Act under which Appellant was committed. Both parties to the appeal agree that a discharge of an individual from an involuntary commitment does not automatically make moot the question of the legality of the commitment. See Wolfe v. Beal, 477 Pa. 477, 384 A.2d 1187 (1978); Commonwealth ex rel. Platt v. Platt, 266 Pa.Super. 276, 404 A.2d 410 (1979); Commonwealth ex rel. Bielat v. Bielat, 257 Pa.Super. 446, 390 A.2d 1321 (1978). The Appellee, however, argues that the impact and degree of stigma associated with a commitment should be evaluated in deciding whether the discharge of the committed party has made moot the question of the legality of the commitment.
If we were to adopt the Appellee's argument, we would be creating entirely new standards in the law as it pertains to the expungement of records of improper commitments. The Appellee would have the courts examine and weigh, in each case, the degree of personal stigma suffered by each individual who challenges a prior commitment, in order to determine whether the issue might be dismissed on the ground of mootness. We will not insert such a new procedural step and substantive ground in the law applicable in this type of case. While we note that there is a brief discussion and *543 rejection of a similar argument in a footnote to a Concurring and Dissenting Opinion by Judge Spaeth in Commonwealth ex rel. Platt v. Platt, 266 Pa.Super. at 294, 404 A.2d at 419 (fn. 3 to Concurring and Dissenting Opinion), we find no applicable precedent which would justify the insertion of such a standard in our law. The Supreme Court held in Wolfe v. Beal, supra, that the continued existence of records of a mental commitment poses a threat to a person's reputation. There is no suggestion in that case, or any other case we have examined, that each individual's reputation must be studied to determine whether it may preclude an appeal after an allegedly illegal commitment. We therefore decline Appellee's request that we find this appeal to be moot, based upon any evaluation of the relative harm to the Appellant's reputation.[4]
The Appellee also argues that the issues raised on this appeal may be determined to be moot because of intervening changes in the law.[5] In this regard, the Appellee addresses attention to the Appellant's procedural argument concerning the timeliness of the commitment hearing. We will address the Appellant's procedural contentions later in this Opinion. However, without regard to the merits of the Appellant's procedural claims, we find no validity to the contention that an intervening change in the law regarding mental commitment procedures can render moot an appellant's attempt to secure expungement of records of a commitment suffered under alleged defective procedures, even if such procedures have since been changed.
The Appellee, in raising this argument, cites for authority In Re Gross, 476 Pa. 203, 382 A.2d 116 (1978). In that case *544 the petitioner sought injunctive relief from the continued and future administration of medication to him without his consent. By the time the appeal reached the Supreme Court, the petitioner had been discharged and was under the care of his own physician. Further, new legislation had been passed while the appeal was in process, and it addressed the circumstances of which the petitioner complained. The Supreme Court, in these particular circumstances, determined that there was no danger of a repetition of the conduct the petitioner sought to enjoin, and held that the case was moot. In Re Gross is clearly distinguishable from the instant appeal, where the Appellant does not seek to enjoin conduct which is not likely to reoccur, but rather asks for the expungement of a record created and existing as a result of a former procedure that was allegedly unlawful. A later change in the law totally resolved the problem faced by the petitioner in In Re Gross; in the instant case, the change in procedure had no effect upon the Appellant's record. Thus, we reject the contention that 1978 amendments to the Act under which Appellant was earlier committed operated to make moot her request for expungement due to procedural defects in the commitment.
On the instant appeal, the Appellant raises two arguments to support her request for expungement of the record. Her first claim is that she was not afforded her procedural rights because a hearing on the Appellee's § 303 petition for extended treatment was not timely held. The Appellee argues that this contention was waived because it was not preserved by specific objection in the lower court. We must agree with the Appellee.
The record shows that during the course of hearings before the lower court judge, the Appellant's counsel never specifically argued that the hearing had not been timely held within twenty-four hours of the filing of the petition for extended emergency care, as required by § 303(b) of the Act. Rather, the Appellant's counsel either contended, in general, that the procedures of the Act were not followed, or argued specifically that the petition for extended treatment *545 was not timely filed within the initial seventy-two (72) hour emergency commitment as required by § 302. The only mention of a hearing in the transcript of proceedings before the lower court is a mere statement by counsel, rather than an argument for reversal, that the hearing had to be held within the initial three day period of commitment, presumably referring to the initial emergency commitment period of seventy-two hours under § 302. In an Application for Supersedeas filed with our Court simultaneous with the filing of the instant appeal, the Appellant's counsel notes clearly the claim that the § 303 petition was not timely filed. There is no reference to the contention that a hearing was not held within 24 hours after the petition was filed.
In the instant appeal, Appellant's brief concedes the timely filing of the § 303 petition by the Appellee, but argues that the hearing was not timely held within the twenty-four (24) hour period required by § 303(b). It is well established that a party must preserve a specific point for appellate review by raising it first in the lower court; a different theory of relief may not be successfully advanced for the first time on appeal. Weyandt v. Restaneo, 461 Pa. 245, 336 A.2d 268 (1975); Pegg v. General Motors Corp., 258 Pa.Super. 59, 391 A.2d 1074 (1978); Strickler v. United Elevator Co., Inc., 257 Pa.Super. 542, 391 A.2d 614 (1978); Matthew-Landis Co., Inc. v. Housing Authority of Chester County, 240 Pa.Super. 541, 361 A.2d 742 (1976). Therefore, we cannot reach the merits of Appellant's claim that she was not afforded a timely hearing, pursuant to § 303(b) of the Act, on the Appellee's petition for extended treatment under § 303.
The Appellant next contends that the lower court erred in applying a less exacting standard in committing her than is specified in the Mental Health Procedures Act. After a thorough review of the record, we must agree.
The United States Supreme Court has established clear standards which must be met before an involuntary mental health commitment may be justified. In O'Connor v. *546 Donaldson, 422 U.S. 563, 575, 95 S.Ct. 2486, 2493, 45 L.Ed.2d 396 (1975), the Court stated:
". . . There is . . . no constitutional basis for confining. . . persons involuntarily if they are dangerous to no one and can live safely in freedom . . . That the State has a proper interest in providing care and assistance to the unfortunate goes without saying. But the mere presence of mental illness does not disqualify a person from preferring his home to the comforts of an institution."
Our Commonwealth's Mental Health Procedures Act appears to follow the Supreme Court's admonition. It requires that a person be "severely mentally disabled" and requires the court to find that the subject of the action is a "clear and present danger" to himself or others before a commitment for involuntary mental treatment may be justified. See § 301(a) of the Act, 50 P.S. § 7301(a). Other sections of the Act make it even more clear that commitments are not to be ordered except in the most serious circumstances. § 301(b)(1), 50 P.S. § 7301(b)(1), establishes that a finding of a "clear and present danger" must be based upon an overt act which occurred within the thirty (30) days prior to the hearing. If the act was allegedly dangerous to others, it must either have threatened or resulted in serious bodily harm. § 301(b)(2), 50 P.S. § 7301(b)(2). If the act is alleged to have been self-harmful, the Act requires that it be manifested by attempts at suicide or self-mutilation. § 301(b)(2), 50 P.S. § 7301(b)(2). If no overt act is shown, commitment may only be justified if:
". . . the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under the act." § 301(b)(2), 50 P.S. § 7301(b)(2).
*547 Not only is the Act very specifically drawn, but it has been held that it must be construed very strictly by the courts. As the Federal District Court stated in Eubanks v. Clarke, 434 F.Supp. 1022, 1028 (E.D.Pa. 1977): ". . . [T]he very nature of civil commitment . . . entails an extraordinary deprivation of liberty . . . A statute sanctioning such a drastic curtailment of the rights of citizens must be narrowly, even grudgingly construed, in order to avoid deprivations of liberty without due process of law." It is also significant in the instant case that we recognize that such standards of construction extended to the Appellant in this case, even though she was a juvenile during the proceedings which resulted in her commitment. The Supreme Court, in its landmark decision in In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), clearly declared that juveniles are entitled to due process rights. In Bartley v. Kremens, 402 F.Supp. 1039 (E.D.Pa. 1975), the District Court extended due process guarantees for minors to mental health commitments, and struck down provisions of the Pennsylvania Mental Health and Mental Retardation Act of 1966[6] as violative of the rights of juveniles. Upon review, the Supreme Court, in Kremens v. Bartley, 431 U.S. 119, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977), vacated the judgment of the District Court on the ground of mootness because ". . . under the 1976 Act, juveniles age 14 and older[7] are given essentially the same rights as are given to adults." 431 U.S. at 126-127, 97 S.Ct. at 1713-1714. (emphasis added). Thus, it is clear that the Appellant, who was 16 years of age at the time of the commitment, was then entitled to full rights of due process, as provided in the Act.
It is also quite evident that the lower court erred in according the Appellant less than her complete rights under the Act. This conclusion is mandated by even the most cursory review of the transcript of proceedings before the lower court. Early in the hearing the Court stated:

*548 "When there is a question of whether the child is competent to be free and released to the community as opposed to being unable to function in the community on her own, the Court is not going to apply stringent technical standards."
Later, during a discussion between the judge and counsel concerning the necessary burden of proof in the case, the judge stated:
"There are several basis for holding people. Particularly with juveniles. It is not required that she be in danger of hurting herself or others within the next thirty days or that she necessarily has committed a dangerous act herself or against others in the past thirty days. The issue is whether or not with her condition she is capable of performing and functioning independently in the community without supervision and support and mental health care. That is the issue we really are concerned about, the danger to herself or others when we are dealing with juveniles. We are concerned about the capacity to function without supervision."
When defense counsel objected that the Act did not distinguish between juveniles and adults, and required a showing of a clear and present danger, the court, in its discussion, set forth the standard it followed:
"We are not hearing these cases only on the basis of danger and injury. That is not the total meaning of the act. I think there is also a further condition of the act as far as my interpretation, interpreting since 1970, I guess when I first came on the bench. No problems with interpretation. With a juvenile, we don't have to find that she will go out and kill somebody in thirty days or she will jump off a bridge in thirty days. Our relevant finding in most cases is whether or not they can perform in the community even with supervision in the home in the foreseeable future, thirty days if you want to say that without some kind of supervision, direction from Mental Health authorities."
*549 It cannot be doubted that the lower court in the instant case evaluated the Appellant's case by less stringent standards than were permissible, and in so doing, violated her due process rights.
It appears that the lower court has confused its role in cases involving the mental commitments of juveniles with its duties in actions under the Juvenile Act. Act of July 9, 1976, P.L. 586, No. 142, § 2, effective June 27, 1978, 42 Pa.C.S. § 6301 et seq. While we commend the lower court's obvious concern for the ability of the juvenile to perform and function independently in the community, we cannot support the practice of mental commitments of problem children under standards which are insufficient under both well established case law and the clear provisions of the Mental Health Procedures Act.
The Appellant in the instant case was not before the lower court for any proceeding under the Juvenile Act. She appeared with counsel to contest a petition for extended involuntary mental care. Elementary standards of due process prohibited the lower court from applying the standards of the Juvenile Act against her in that proceeding. Moreover, the Juvenile Act itself provides, in 50 P.S. § 6356, that if the court finds that a child may be subject to commitment under the Mental Health Procedures Act, the court shall proceed under the provisions of the Mental Health Procedures Act.[8] While we share the lower court's obvious concern that the Appellant receive the best possible help and care in dealing with her problems, we cannot condone the lower court's failure to observe the unequivocal mandate of our highest court and the specific declaration of applicable statutory law.
*550 We hereby reverse and in accordance with the holding in Wolfe v. Beal, supra, order the expungement of all records of the Appellant's February 2, 1979 order of commitment.
BROSKY, J., files a dissenting opinion.
BROSKY, Judge, dissenting:
I am obliged to respectfully dissent in the above matter.
While I agree with the majority opinion that standards must be clear and complied with under the Mental Health Procedures Act of 1976, Act of July 9, 1976, P.L. 817, No. 143, Sec. 101 et seq., 50 P.S. Sec. 7101 et seq., I do not believe this to be the proper factual circumstances under which those standards should be elucidated.
NOTES
[1] Act of July 9, 1976, P.L. 817, No. 143, § 101 et seq., 50 P.S. § 7101 et seq.
[2] § 302, set forth in 50 P.S. § 7302, provides for emergency examination and treatment of a person believed by a physician to require immediate treatment because of a mentally disabling condition. Such an emergency commitment, under the 1976 Act, was not to extend beyond 72 hours unless within that initial 72 hour period of commitment, a petition for extended treatment was filed pursuant to § 303 of the Act, set forth in 50 P.S. § 7303. In the 1976 Act, § 303 provided in part for extended emergency care and treatment of a person originally committed under § 302 for an additional twenty (20) day period. § 303(b) specified that ". . . within twenty-four (24) hours after the application [for continued commitment] is filed, an informal hearing shall be conducted by a judge or by a mental health review officer." (emphasis added)
[3] The record, as received by this Court, does not contain a copy of a written order or decision by the Mental Health Review Officer. However, the record does include a Petition for Leave to Appeal Dismissal of Mental Health Review Officer, filed in the lower court by MH/MR, as well as an Application for Supersedeas filed in the lower court by Appellant, which each state that the Review Officer dismissed on the finding that the § 303 petition was not filed within the seventy-two (72) hour period specified in § 302.
[4] Any involuntary commitment for psychiatric treatment must be viewed as a serious matter, as it is unfortunate that many in our society still view mental illnesses with disdain and apprehension, and that a person committed in the past can suffer continuing restrictions in life, although totally cured of the mentally disabling problem. See In re Ballay, 482 F.2d 648, 651-653 (D.C. Cir. 1973)
[5] Appellee relies upon changes in procedure under the Act, resulting from various amendments provided in the Act of November 26, 1978, P.L. 1362, No. 324, § 1.
[6] Act of Special Session No. 3, October 20, 1966, P.L. 96, Article I, § 101 et seq., 50 P.S. § 4101 et seq.
[7] The Act only mentions juveniles over the age of 14 in two sections dealing with voluntary commitments.
[8] § 6356 states:

If, at a dispositional hearing of a child found to be a delinquent or at any hearing, the evidence indicates that the child may be subject to commitment or detention under the provisions of the act of October 20, 1966 (3rd Sp.Sess., P.L. 96, No. 6), known as the "Mental Health and Mental Retardation Act of 1966," or the act of July 9, 1976 (P.L. 817, No. 143), known as the "Mental Health Procedures Act," the court shall proceed under the provisions of the appropriate statute.