688 A.2d 217

**In re Anthony CHIUMENTO, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 3, 1996.

Decided Jan. 21, 1997.

Gary F. Selway, Greenburg, for appellant.

Templeton Smith Jr., Pittsburgh, for Westmoreland Regional Hosp.

Before KELLY, JOHNSON and OLSZEWSKI, JJ.

KELLY, Judge:

In this appeal, we are called upon to determine whether the specific due process protections provided to a person under the Mental Health Procedures Act[1] have been abrogated where that person had been admitted to a hospital for involuntary emergency psychiatric examination and treatment pursuant to 50 P.S. § 7302 and where certification for extended

---

1. 50 P.S. § 7101 *et seq.*

involuntary emergency treatment, pursuant to 50 P.S. § 7303, was not filed, nor was the person discharged, within one hundred, twenty hours of the original admission for psychiatric examination and treatment. Because the specific procedural protections and mandates delineated in the Act were not followed, we hold that the appellant's involuntary commitment was improper and that the outcome of the hearing on the Section 7303 petition should have been the automatic discharge of the appellant. Accordingly, we vacate the February 12, 1996 order, which denied the appellant's application for writ of *habeas corpus;* vacate the February 16, 1996 order, which denied the appellant's petition for review of his involuntary civil commitment and his request for expungement of all record pertaining to such commitment; and remand to the trial court with directions.

The relevant facts and procedural background of this appeal are as follows. The appellant, Anthony Chiumento, who had a history of psychiatric problems and had been under the care of a psychiatrist in San Diego, California where he resided, came to Pennsylvania presumably to visit with members of his family who lived in Jeanette, Pennsylvania. The appellant flew into Pittsburgh, where he stayed the night at the Pittsburgh Hilton Hotel. The following night, the appellant stayed at the Priory Hotel in Pittsburgh but began to have some difficulty functioning. His family was summoned and they persuaded him to go to the emergency room at Allegheny General Hospital. Allegheny General Hospital subsequently released the appellant but his family, possibly assuming that he would be admitted to the hospital, had collected his belongings from the Priory Hotel and had taken them back home to Jeanette. Having no money and no clothing, the appellant stayed the night at the Light of Life Mission.

Early on the morning of February 2, 1996, the appellant hired a taxicab to drive him to Jeanette, Pennsylvania, arriving there between approximately one-thirty and two-thirty A.M. When he arrived in Jeanette, the appellant, believing that a limousine was being sent from the Hilton Hotel to drive him and several family members to Punxsutawney, Pennsylva-

nia to see that most famous of vernal-prognosticating ground-hogs, Punxsutawney Phil, was dismayed to find that no limousine had appeared. Because no limousine had arrived, the appellant, in an increasingly agitated state, began knocking on various front doors in his relatives' neighborhood, possibly looking for somewhere to stay the night. His sister, Joanne, approached him to try to calm him down. He grabbed her by the arms and pushed her away. The Jeanette police were summoned and escorted the appellant to the station house, where he was placed in a holding cell. While there, the appellant broke a plexiglass window, employed a piece of the plexiglass to cut his finger and then wrote on the holding cell wall in blood. The appellant washed his face repeatedly in the holding cell toilet, stating that he wanted to look good for the television camera. The appellant also repeatedly addressed "little Japanese people." He clogged the toilet, flooding the area and then began scrubbing the cell floor, later claiming to have been performing environmental re-engineering. The Jeanette police deduced that the appellant had some mental problems and escorted him to Westmoreland Regional Hospital, where he was admitted for psychiatric evaluation at 8:00 A.M. on February 2, 1996.

Following an evaluation of the appellant, Dr. Donald P. Breneman prepared a petition for extended involuntary emergency treatment pursuant to 50 P.S. § 7303. Mr. Will Frye, an employee in the office of the Westmoreland County Director of Mental Health/Mental Retardation, was contacted by the hospital and, as was the usual and customary practice in the county, he picked up this petition on Tuesday, February 6, 1996, together with any others that had been prepared since his last visit. The petition was then filed with the Court of Common Pleas. In Westmoreland County, hearings on petitions filed pursuant to 50 P.S. § 7303 are held on Wednesdays. The appellant's hearing was scheduled for Wednesday, February 7, 1996, at 9:00 A.M., but did not actually commence until approximately 10:00 A.M. As a result of that hearing, the Mental Health Review Officer, John Mika, issued a verbal certification for extended involuntary emergency treatment.

At all times, the appellant was informed of what was taking place on his behalf. Following the hearing, on February 9, 1996, the appellant's attorney, Gary F. Selway, Esquire, filed an application for writ of *habeas corpus*. The Honorable Bernard F. Scherer presided over a hearing on February 9, 1996, on the *habeas corpus* which he denied. On February 12, 1996, the appellant filed a petition for review of his commitment pursuant to 50 P.S. § 7303. The Honorable Gilfert M. Mihalich heard argument on February 14, 1996. Certification for extended involuntary emergency treatment was finally filed the same day. On February 16, 1996, Judge Mihalich denied the appellant's petition and sustained the findings of the Mental Health Review Officer. This timely appeal followed.

On appeal, the appellant presents the following issues for our review:

I. DOES THE COURT HAVE JURISDICTION OVER A MENTAL HEALTH PATIENT WHO HAS NOT BEEN PERSONALLY SERVED WITH ANY LEGAL PAPERS RELATING TO HIS JUDICIALLY AUTHORIZED INVOLUNTARY HOSPITAL COMMITMENT?

II. DOES THE NEED FOR TREATMENT OF A MENTAL HEALTH PATIENT SUPERSEDE COMPLIANCE WITH THE LIBERTY PROTECTING DUE PROCESS REQUIREMENTS OF THE MENTAL HEALTH PROCEDURES ACT?

III. IS A WRIT OF HABEAS CORPUS AN EQUITABLE REMEDY WHICH REQUIRES THE COURT TO CONDUCT A BALANCING TEST OF DUE PROCESS VIOLATIONS VERSUS A PATIENT'S NEED TO BE TREATED AND THE POTENTIAL DANGER TO HIMSELF OF RELEASING THE PATIENT?

IV. IS SECTION 7303(d) OF THE MENTAL HEALTH PROCEDURES ACT, WHICH REQUIRES A WRITTEN CERTIFICATION FOR EXTENDED INVOLUNTARY TREATMENT TO BE FILED

WITH THE COURT AND SERVED ON COUNSEL AND THE PATIENT, TO BE STRICTLY COMPLIED WITH?

(The Appellant's Brief at 3).

■ Preliminarily we note that although the commitment period authorized by the section 7303 hearing in question has long since expired, a live controversy still exists

> "because involuntary commitment affects an important liberty interest, and because by their nature most involuntary commitment orders expire before appellate review is possible." *Commonwealth v. Ida Baker [Blaker],* 293 Pa.Super. 391 n. 1, 446 A.2d 976, 977 n. 1 (1981). Furthermore, "were we to dismiss such appeals as moot, the challenged procedure could continue yet its propriety would evade our review." *In re Ann S.,* 279 Pa.Super. 618, 621 n. 2, 421 A.2d 370, 372 n. 2 (1980). *See also In re S.C.,* 280 Pa.Super. 539, 421 A.2d 853 (1980); *Commonwealth ex rel. Bielat v. Bielat,* 257 Pa.Super. 446, 390 A.2d 1321 (1978).

*In re Condry,* 304 Pa.Super. 131, 133–34, 450 A.2d 136, 137 (1982). *See also In re S.O.,* 342 Pa.Super. 215, 227, 492 A.2d 727, 733 (1985). Thus, this appeal is not moot and is properly before us.

■ In his second issue, the appellant questions whether a mental health patient's need for treatment should supersede the trial court's compliance with the due process requirements of the Mental Health Procedures Act. Specifically, the appellant asserts that because the trial court did not conduct an informal hearing on the petition for extended involuntary emergency treatment within the requisite one hundred, twenty hours, he should not have been held at all, but should have been released immediately. We agree in part.

Section 7302 of Title 50 of the Pennsylvania Statutes provides the guidelines which must be followed when involuntary emergency examination and treatment has been authorized by a physician. In pertinent part, Section 7302 states the following:

**(d) Duration of Emergency Examination and Treatment.**—A person who is in treatment pursuant to this section shall be discharged whenever it is determined that he no longer is in need of treatment and in any event within 120 hours, unless within such period:

> (1) he is admitted to voluntary treatment pursuant to section [7202] of this act; or

> (2) a certification for extended involuntary emergency treatment is filed pursuant to section [7303] of this act.

50 P.S. § 7302(d)(footnotes omitted).

The law in Pennsylvania is well-settled that

involuntary civil commitment of mentally ill persons constitutes deprivation of liberty and may be accomplished only in accordance with due process protections. *Appeal of Niccoli,* 472 Pa. 389, 395 n. 4, 372 A.2d 749, 752 n. 4 (1977); *Commonwealth v. McQuaid,* 464 Pa. 499, 517, 347 A.2d 465, 475 (1975); *Commonwealth ex rel. Finken v. Roop,* 234 Pa.Super. 155, 163, 339 A.2d 764, 768 (1975), *appeal dismissed,* 424 U.S. 960, 96 S.Ct. 1452, 47 L.Ed.2d 728 (1976). *See also, Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). As the General Assembly stated in enacting the MHPA:

> It is the policy of the Commonwealth of Pennsylvania to seek to assure the availability of adequate treatment to persons who are mentally ill, and it is the purpose of this act to establish procedures whereby this policy can be effected. *The provisions of this act shall be interpreted in conformity with the principles of due process to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others.*

50 P.S. § 7102 (emphasis supplied).

*In re Hutchinson,* 500 Pa. 152, 156, 454 A.2d 1008, 1010 (1982). More recently, the late Justice McDermott, again speaking for the Pennsylvania Supreme Court, has stated the following with specific regard to 50 P.S. § 7302:

It is clear from the language used in 50 P.S. § 7302 that when an individual is properly admitted to involuntary inpatient treatment, he will be provided with court intervention *within 120 hours or less*. The language of this statutory provision is unambiguous and admits of no exception to the 120 hour time frame.

*In re J.S.*, 526 Pa. 418, 426, 586 A.2d 909, 913 (1991)(emphasis added). *See also In re S.O., supra* at 229, 492 A.2d at 735 ("adherence to procedural due process at the initial stage of the commitment process does not satisfy the requirements of continued safeguarding of a person's liberty interests as he undergoes increasingly long periods of involuntary institutionalization").

Instantly, the appellant was admitted to Westmoreland Regional Hospital for psychiatric evaluation at 8:00 A.M. on Friday, February 2, 1996. After examining him, the evaluating psychiatrist, having determined that he had reasonable grounds to believe that the appellant was severely mentally disabled and in need of immediate treatment, *see* 50 P.S. § 7302(b); prepared a petition for extended involuntary emergency treatment pursuant to 50 P.S. § 7303. A Mental Health Review Officer conducted a hearing on the petition, commencing between 10:00 A.M. and 10:30 A.M. on Wednesday, February 7, 1996. Thus, the Section 7303 hearing was not held until after the one hundred, twenty hours had expired by at least two hours. Moreover, certification for extended involuntary emergency treatment was not actually filed until February 14, 1996, which by any means of reckoning was *well* after the one hundred, twenty hour deadline had expired. Because 50 P.S. § 7302 affords no exception to the one hundred, twenty hour requirement, *see In re J.S., supra;* we conclude that on February 7, 1996, the petition for extended involuntary emergency treatment, filed pursuant to 50 P.S. § 7303, should have been denied and the appellant discharged. Hence, we hold that the trial court improperly denied both the appellant's writ of *habeas corpus* and the petition for review.

Based upon the foregoing, we vacate the orders of February 12, 1996, and February 16, 1996, and remand with directions

384

to the trial court to expunge any and all record of the appellant's involuntary civil commitment.

Orders vacated; case remanded for expungement of the record. Jurisdiction is relinquished.