J-A16031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: PETITION OF J.M.Y. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| ALLEGHENY COUNTY DEPARTMENT OF BEHAVIORAL HEALTH AND THE PENNSYLVANIA STATE POLICE, | |
| Appellees | |
| APPEAL OF: J.M.Y. | No. 1323 WDA 2015 |

Appeal from the Order March 10, 2015
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CC 1419 of 2014

BEFORE:  SHOGAN, OLSON, and STRASSBURGER,[*] JJ.

DISSENTING MEMORANDUM BY SHOGAN, J.:  **FILED NOVEMBER 16, 2016**

While the Majority presents a cogent analysis in this matter, I am compelled to respectfully register my dissent.

Instantly, Appellant was a student at the University of Pittsburgh on September 21, 2012, when he attended a fraternity party and became intoxicated.  At the time, Appellant was taking prescribed medications for depression and anxiety.  On that date, Appellant was apprehended by University of Pittsburgh Police when it was reported that Appellant was attempting to harm himself.  The police took Appellant to Western Psychiatric Hospital, where he was involuntarily committed under section

_____

[*]  Retired Senior Judge assigned to the Superior Court.

302 of the Mental Health Procedures Act ("MHPA") 50 P.S. § 7101, *et seq*.

Subsequently, Appellant was discharged on September 25, 2012.[1] Appellant

continued his course of studies in law enforcement at the University of

Pittsburgh. On November 24, 2014, he filed a petition to vacate and

expunge his involuntary commitment pursuant to 18 Pa.C.S. § 6105(f)(1)[2]

and 18 Pa.C.S. § 6111.1(g)2).[3] A hearing was held on January 8, 2015, and

on March 10, 2015, the trial court signed an order denying Appellant's

petition for expungement.[4] Appellant filed exceptions that were denied by

operation of law, resulting in this appeal on August 27, 2015.[5]

_____

[1] Pursuant to 18 Pa.C.S. § 6105(c)(4), a person who has been involuntarily committed to a mental institution for inpatient care and treatment under section 302, 303 or 304 of the MHPA is prohibited from possessing, using, controlling, selling, transferring, or manufacturing a firearm. In addition, Appellant is prohibited from possessing a firearm under 18 U.S.C. § 922(g)(4).

[2] Under 18 Pa.C.S. § 6105(f)(1), the court of common pleas, upon application of a person subject to prohibition under section 6105(c)(4), "may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person."

[3] Section 6111.1(g)(2) provides a means for expungement of records of section 302 involuntary commitment where the evidence was insufficient to justify such commitment.

[4] The order dated March 10, 2015, was not entered upon the docket until August 26, 2015. Record Docket Entry # 7.

[5] On October 7, 2015, the trial court issued an opinion in support of its March 10, 2015, order. The trial court concluded that Appellant was validly committed under section 303 and, thus, was barred from possessing a
*(Footnote Continued Next Page)*

The learned Majority is correct in its statement that prevailing case law has interpreted 18 Pa.C.S. § 6111.1(g) as providing no opportunity to obtain expunction of mental health record pursuant to a commitment under section 303 and only allows for a trial court to review commitments under section 302. **See In re Jacobs**, 15 A.3d 509, 511 (Pa. Super. 2011). In addition, I agree with the Majority's statement "that an appellant seeking expunction and restoration of firearms rights cannot 'bootstrap' review of a section 303 commitment to a petition seeking review of a section 302 commitment under section 6111.1(g) because the section 303 commitment is 'an entirely separate judicial proceeding, complete with its own avenue of appeal.'" Majority Memorandum, at 7 (quoting **Jacobs**). However, it is my firm belief that only a section 303 commitment that provides adequate due process may preclude an expunction of a section 302 commitment.

_(Footnote Continued)_ _____

firearm under 18 Pa.C.S. § 6105(a)(1) and (c)(4). Trial Court Opinion, 10/7/15, at 1. The trial court stated, however, that it limited its review to the sufficiency of the evidence for the section 303 commitment. **Id**. at 2. In addition, the trial court noted the following:

> On July 28, 2015, an Order was filed in the matter restoring [A]ppellant's rights to possess a firearm under 18 Pa.C.S.A. § 6105(f)(1). Although this allows Appellant to again possess a firearm under Pennsylvania law, he is still barred from possessing a firearm under the federal Gun Control Act. 18 U.S.C.A. § 922(g)(4).

Trial Court Opinion, 10/7/15, at 1, n.1.

The law in Pennsylvania is "well-settled that involuntary civil commitment of mentally ill persons constitutes deprivation of liberty and may be accomplished only in accordance with due process protections." *In re Hutchinson*, 454 A.2d 1008, 1010 (Pa. 1982); *In re Chiumento*, 688 A.2d 217, 220 (Pa. Super. 1997). "The very nature of civil commitment . . . entails an extraordinary deprivation of liberty. . . . A statute sanctioning such a drastic curtailment of the rights of citizens must be narrowly, even grudgingly construed, in order to avoid deprivations of liberty without due process of law." *In re Woodside*, 699 A.2d 1293, 1298 (Pa. Super. 1997) (quoting *In Re S.C.*, 547, 421 A.2d 853, 857 (Pa. Super. 1980)).

> The legislative policy reflected in the Mental Health Procedures Act is to require that strict conditions be satisfied before a court order for commitment shall be issued. . . . Such a policy is in accord with the recognition that commitment entails a massive deprivation of liberty. Collateral consequences, too, may result from the stigma of having been adjudged mentally ill. . . . Numerous restrictions and routines are imposed in a mental hospital . . . [and] are designed to aid and protect the mentally ill persons, even those already in custody for other reasons, who do not need such treatment should not be subjected to it. Indeed, a person who is mistakenly committed to a mental hospital might suffer serious psychological damage. For these reasons, **strict adherence to the statutory requirements is to be compelled**.

*In re Ryan*, 784 A.2d 803, 807 (Pa. Super 2001) (quoting *Commonwealth v. Hubert*, 430 A.2d 1160, 1162 (Pa. 1981) (emphasis added). As we ultimately held in *In re Ryan*, when an appellant's due process rights under the MHPA are violated, "we may vacate the certification for involuntary

treatment pursuant to section []303, and direct that all records pertaining to this matter be expunged." *In re Ryan*, 784 A.2d at 808.

With these overriding concepts in mind, I observe the following. Section 302 of the MHPA provides for the involuntary emergency examination and treatment of a person not to exceed 120 hours if, upon certification of a physician for examination, or upon a warrant issued by a county administrator authorizing an examination, an examination conducted within two hours of arrival by a physician shows that the person is severely mentally disabled and in need of emergency treatment. 50 P.S. § 7302(a), (b). Section 303 of the MHPA provides for extended involuntary emergency treatment of any person who is being treated pursuant to section 302 for a period not to exceed 20 days if, after an informal conference where the patient is represented by counsel, a judge or mental health review officer finds that the patient is severely mentally disabled and in need of continued involuntary treatment, and so certifies. 50 P.S. § 7303(a)-(c). Indeed, the person is entitled to the appointment of counsel. 50 P.S. § 7303(b). In addition, section 303(c) requires the following:

> (1) At the commencement of the informal conference, the judge or the mental health review officer **shall inform the person of the nature of the proceedings**. Information relevant to whether the person is severely mentally disabled and in need of treatment shall be reviewed, including the reasons that continued involuntary treatment is considered necessary. Such explanation shall be made by a physician who examined the person and shall be in terms understandable to a layman. The judge or mental health review officer may review any relevant information even if it would be normally excluded under rules of

evidence if he believes that such information is reliable. The person or his representative shall have the right to ask questions of the physician and of any other witnesses and to present any relevant information. At the conclusion of the review, if the judge or the review officer finds that the person is severely mentally disabled and in need of continued involuntary treatment, he shall so certify. Otherwise, he shall direct that the facility director or his designee discharge the person.

50 P.S. 7303(c)(1).

Also of importance are the following provisions of the statute:

**(d) CONTENTS OF CERTIFICATION. — A certification for extended involuntary treatment** shall be made in writing upon a form adopted by the department and **shall include**:

(1) findings by the judge or mental health review officer as to the reasons that extended involuntary emergency treatment is necessary;

(2) a description of the treatment to be provided together with an explanation of the adequacy and appropriateness of such treatment, based upon the information received at the hearing;

(3) any documents required by the provisions of section 302;

(4) the application as filed pursuant to section 303(a);

(5) a statement that the person is represented by counsel; and

(6) **an explanation of** the effect of the certification, **the person's right to petition the court for release under subsection (g), and the continuing right to be represented by counsel.**

**(e) FILING AND SERVICE. — The certification shall be filed with the director of the facility and a copy served on the person,** such other parties as the person requested to be notified pursuant to section 302(c), and on counsel.

**(f) EFFECT OF CERTIFICATION. — Upon the** filing and **service of a certification for extended involuntary emergency treatment**, the person may be given treatment **in** an approved facility for a period not to exceed 20 days.

**(g) PETITION TO COMMON PLEAS COURT. —** In all cases in which the hearing was conducted by a mental health review officer, **a person made subject to treatment pursuant to this section shall have the right to petition the court of common pleas for review of the certification**. A hearing shall be held within 72 hours after the petition is filed unless a continuance is requested by the person's counsel. The hearing shall include a review of the certification and such evidence as the court may receive or require. If the court determines that further involuntary treatment is necessary and that the procedures prescribed by this act have been followed, it shall deny the petition. Otherwise, the person shall be discharged.

50 P.S. § 7303(d), (e), (f), (g) (emphases added).

Appellant asserts, with supporting citation to the record, that:

[O]n September 25, 2012, the day of the purported hearing before the Mental Health Review Officer, he was approached by a doctor and then a public defender and asked to sign certain documents. ([N.T., 1/8/15, at 32-33]) However, based on the prior recommendation of a head nurse, the Petitioner declined to sign the documents. ([*Id*. at 33]) [Appellant] testified that he never saw the doctor or public defender again, and shortly thereafter that day he was released with no directives or instructions for further treatment. (Ibid.) At the time of his release, [Appellant] was never advised of the occurrence of a Section 303 hearing, was never advised of the nature or ramifications of such a hearing, did not appear at any such hearing, did not stipulate to the Certification, and was not provided with any documents indicating that such a hearing had taken place or the results thereof. ([*Id*. at 33-35]) [Appellant] was simply advised to gather his things and go home, and to make contact with the Pitt authorities regarding any requirements they might have for continuing as a student there. ([*Id*. at 33, 36, 43])

The WPIC Inpatient Discharge Summary confirmed that [Appellant] was discharged on September 25, 2012, three days

after his admission to the facility. ([Docket Entry 1, Exhibit 8]) The Summary further stated that [Appellant] "won his 303 hearing on 9/25/12 after police who petitioned his 302 did not show up to hearing" and that he was "discharged to home with his parents after winning his 303 hearing on 9/25/12 after police did not show up for his 303 hearing." The Summary ended with the statement that [Appellant] had a "[s]uperficial L wrist laceration - no treatment needed." There was no indication in the Summary that [Appellant] was to engage in any sort of out-patient treatment of any kind.

Appellant's Brief at 8-9.

In effect, Appellant claims there was no valid section 303 commitment at all. He believes that "the 303 certification was merely a device for accomplishing the immediate release of [Appellant] from the 302 commitment while assuaging the liability concerns of UPMC and WPIC." Appellant's Brief at 19.[6]

Upon review of the certified record, I also question whether a valid 303 commitment was held and, if so, whether the certification was proper. At the expungement hearing, Appellant testified that, although he spoke with a public defender prior to his release from the hospital, he was unaware of any 303 commitment hearing held on September 25, 2012. N.T., 1/8/15, at 32-33. All Appellant testified to was the fact that he "was told that there **could** be a hearing." *Id*. at 33 (emphasis added). In addition, my review of the certified record reflects that, by happenstance, the public defender who

_____

[6] Although not raised as an issue on appeal, it does seem peculiar, if not an oxymoron, that "outpatient treatment" can constitute "extended involuntary emergency treatment" under section 303.

signed Appellant's 303 certification was present at the court house at the time of Appellant's expungement hearing and was asked to testify. ***Id***. at 15-20. When called into the courtroom, the public defender stated that he did not "specifically recall [Appellant]." ***Id***. at 16. However, upon reviewing the 303 commitment form, he acknowledged that **Appellant did not attend the 303 hearing**. ***Id***.

Also, Sergeant Andrew Redman of the University of Pittsburgh Police testified at Appellant's expungement hearing. Sergeant Redman explained that university police officers who file 302 petitions typically receive notices of 303 commitment hearings. N.T., 1/8/15, at 54. However, Sergeant Redman stated that he did not appear at a 303 commitment hearing for Appellant on September 25, 2012, and could not recall whether he was ever informed that such a hearing for Appellant was being held. N.T., 1/8/15, at 54-55.

In addition, the certified record reflects that the 303 commitment certification document specifies that Appellant did not attend the hearing. The 303 commitment certification provides as follows:

> AND NOW, this 25TH day of September, 2012, a hearing having been held on a Petition of Extended involuntary Treatment of [Appellant], Respondent, under Section 303 of the Mental Health Procedures Act of 1976, as amended by Act 324 of 1978, the Respondent having been present and represented by the Office of Public Defender, upon consideration of the testimony of *F. DePietro*, MD., a physician on the staff of WPIC, your Mental Health Review Officer finds that the Respondent is severely mentally disabled and presents a clear and present danger to himself/herself or others; and certifies that he/she shall receive:

PLEASE CHECK ONE

□ ~~In-Patient Treatment~~
□ ~~Partial Hospitalization~~
□ Out-Patient Treatment [this box checked]
□ ~~Combination of such treatment as the~~
~~director of the facility shall from time to~~
~~time determine.~~

which is the least restrictive appropriate treatment for the Respondent at *WPIC / Blair Co. MH* Hospital, pursuant to the provisions of the Mental Health Procedures Act, for a period not to exceed Twenty (20) days from the date of this Certification.

_____*Robert Zunich*_____
MENTAL HEALTH REVIEW OFFICER

**Patient Attended YES ____ NO__X__**

Contested _____

Uncontested: Voluntary _____

Stipulation __X__ _____*E.S.*_____
Patient's Counsel's signature required

[Patient is A Resident of BLAIR County]

Docket Entry 1, Exhibit 7 (emphasis added).

Appellant did not sign the 303 commitment certification. Moreover, the 303 commitment certification does not meet all of the requirements of section 303(d). Of particular importance is the fact that there is no evidence Appellant was ever notified of his right to appeal to the court of common pleas under section 303(g) as required under section 303(d)(6). Likewise, there is no evidence that Appellant was provided an explanation of his continuing right to be represented by counsel as required under section

303(d)(6). In addition, there is no evidence that Appellant was served a copy of the section 303 commitment certification as mandated under section 303(e). These failures amount to a deprivation of Appellant's due process rights. Therefore, in my view, Appellant should not be found to have waived his right to appeal.

A study of Appellant's discharge summary from Western Psychiatric Hospital causes further concern. Precisely, the following language from the hospital's discharge document results in my conclusion that Appellant was not properly committed under section 303:

> HOSPITAL COURSE
> . . . He **won his 303 hearing** on 9/25/12 after police who petitioned his 302 did not show up to hearing.
>
> * * *
>
> DISCHARGE PLANNING
> [Appellant] discharged to home with his parents **after winning his 303 hearing** on 9/25/12 after police did not show up for his 303 hearing.

Docket Entry 1, Exhibit 8 (emphases added).

Accordingly, because my review of the certified record reflects that the dictates of the MHPA mandating a valid 303 certification were not met, I am compelled to respectfully dissent and conclude that, because Appellant's due process rights were violated, fundamental fairness requires that his 303 certification records be expunged. Accordingly, I would vacate the certification for involuntary treatment pursuant to section 303, and direct that those records be expunged. *In re Ryan*, 784 A.2d at 807. Once that

- 11 -

is accomplished, Appellant could then seek to expunge his section 302 commitment.