2019 PA Super 212

| | | |
|---|---|---|
| THOMAS J. SEPHAKIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PENNSYLVANIA STATE POLICE | : | No. 2194 EDA 2018 |
| BUREAU OF RECORDS AND | : | |
| IDENTIFICATION, MONTGOMERY | : | |
| COUNTY DEPARTMENT OF | : | |
| BEHAVIORAL | : | |
| HEALTH/DEVELOPMENTAL | : | |
| DISABILITIES, MCES, INC. | : | |

Appeal from the Order Entered May 25, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2017-00794-59

BEFORE:   OLSON, J., DUBOW, J., and STEVENS*, P.J.E.

OPINION BY DUBOW, J.:                          **FILED JULY 10, 2019**

Thomas J. Sephakis ("Appellant") seeks review of the Order denying his Petition to expunge his mental health commitment records and restore his right to possess firearms pursuant to 18 Pa.C.S. §§ 6111.1 and 6105(f)(1) and (j).  After careful review, we affirm.

The trial court has provided a thorough recitation of the facts underlying this case, which we need not repeat in detail.  **See** Trial Ct Op., dated Aug. 17, 2018.  In sum, on October 15, 2015, Appellant's business partner reported to the Pottsgrove Township Police Department that Appellant was suicidal. Officer Robert Greenwood transported Appellant to a Montgomery County Mental Health Facility, and Appellant's parents confirmed that Appellant had

_____

* Former Justice specially assigned to the Superior Court.

been talking about killing himself for the past few days. Appellant was involuntarily committed to the hospital pursuant to Section 302 of the Mental Health Procedures Act ("MHPA"), 50 P.S. § 7302.[1] On October 19, 2015, four days after the involuntary commitment, Appellant received notice and an application submitted by the Montgomery County Emergency Services, Inc., ("County") seeking to extend Appellant's involuntary commitment pursuant to Section 303[2] for an additional 20 days' inpatient treatment. A hearing was scheduled for October 20, 2015.

At the scheduled hearing, Appellant, his privately-retained counsel, and the solicitor for the county facility appeared before the Mental Health Review Officer ("MHRO"). However, the solicitor informed the MHRO that Officer Greenwood was unable to appear that day and requested a continuance of two days. Rather than continue the hearing for two days, Appellant and his

---

[1] "Section 302 of the MHPA provides for the involuntary emergency examination and treatment of a person not to exceed 120 hours if, upon certification of a physician for examination, or upon a warrant issued by a county administrator authorizing an examination, an examination conducted by a physician within two hours of arrival shows that the person is severely mentally disabled and in need of emergency treatment. 50 P.S. § 7302(a), (b)." **In Re: Petition of J.M.Y.**, 179 A.3d 1140, 1144 (Pa. Super. 2018) (*en banc*), *appeal granted*, 194 A.3d 121 (Pa. 2018).

[2] "Section 303 of the MHPA provides for extended involuntary emergency treatment of any person who is being treated pursuant to Section 302 for a period not to except twenty days if, after an informal conference where the patient is represented by counsel, a judge or mental health review officer finds that the patient is severely mentally disabled and in need of continued involuntary treatment, and so certifies. 50 P.S. § 7303(a)-(c)." **J.M.Y.**, *supra*, at 1144.

counsel negotiated a Stipulation whereby Appellant agreed that he was in need of further treatment as alleged in the Section 303 application and to an additional 20 days' outpatient treatment in exchange for his immediate release from the hospital.

The MHRO set forth the Stipulation in a "Certification by the Court for Extended Involuntary Emergency Treatment-Section 303." The Certification indicated that failure to comply with the Order would result in Appellant's return to inpatient status. Appellant did not seek review of the Section 303 Certification. He complied with the Order and completed his outpatient treatment.

Over one year later, on January 12, 2017, Appellant filed a Petition seeking the expungement of his Sections 302 and 303 mental health commitment records and the restoration of his right to possess firearms pursuant to 18 Pa.C.S. §§ 6105(f)(1), (j), and 6111.1(g)(2),[3] or permission

---

[3] Section 6111.1(g)(2) provides:

> (2) A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged. A petition filed under this subsection shall toll the 60-day period set forth under section 6105(a)(2).

to appeal *nunc pro tunc* from his 302 and 303 commitments. Appellant asserted that insufficient evidence supported the Section 302 and 303 commitments and the commitments resulted from a violation of his due process rights. On February 20, 2018, Appellant filed, with permission from the court, an amended Petition asserting that he was proceeding pursuant to the Mental Health Procedures Act generally and 18 Pa.C.S. § 6111.1. **See** N.T., 2/20/18, at 104.

The court held a hearing on February 20, 2018, at which Appellant testified, *inter alia*, that he and his attorney negotiated the agreement at the scheduled Section 303 conference after Appellant agreed that he needed continuing treatment, but did not want to stay in the hospital for even two more days. He stated that he agreed to attend outpatient therapy for 20 days so that he could be immediately discharged from the hospital. **See** N.T., 2/20/18, at 121, 125-27. In response to extensive questioning by the court, Appellant testified that he was aware of his rights, including his right to appeal the Section 303 certification, as well as the loss of his right to possess firearms. **Id**. at 134-38. The court ordered the parties to submit briefs.

After consideration of the parties' briefs, the court denied the Petition on May 25, 2018.

---

18 Pa.C.S. § 6111.1(g)(2). A court has no jurisdiction under 18 Pa.C.S. §6111.1(g) to review a commitment under Section 303. **In re Jacobs**, 15 A.3d 509 (Pa. Super. 2011).

Appellant appealed. Both he and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following Statement of Questions Involved in his brief:

> 1. Did the trial court commit an error of law by failing to apply the holding in *In re JMY*, 179 A.3d 1140 ([Pa. Super.] 2018)[(*en banc*)] (*hereinafter JMY*), to this case?
>
> 2. Did the trial court commit an error of law when it found that the Section 303 Hearing Stipulation was an "Agreed Order" and therefore [Appellant] was precluded altogether from appealing it even if timeliness was not an issue?
>
> 3. Did the trial court commit an error of law when it ruled that much of the evidence that was going to be presented was irrelevant because the court had no intention of considering [Appellant's] argument that *JMY* controls the outcome of this case, or in allowing [Appellant] to develop the case in his own manner?[4]

Appellant's Brief at 2-3.

Our standard of review is well-settled. We review the trial court's denial of a motion for expunction for an abuse of its discretion *Commonwealth v. Smerconish*, 112 A.3d 1260, 1263 (Pa. Super. 2015) (citations omitted).

In his first issue, Appellant contends that the trial court could have reviewed his Section 302 and 303 commitments based on the holding provided in *In Re: Petition of J.M.Y.*, 179 A.3d 1140 (Pa. Super. 2018), *appeal*

---

[4] The portion of Appellant's Brief purporting to correspond to this third issue attempts to assert an entirely different point. Accordingly, this issue as stated is waived. However, we review the argument that was provided *infra*.

- 5 -

*granted*, 194 A.3d 121 (Pa. 2018). In support, Appellant asserts a bare due process argument, contending that "the stipulation was obtained through coercion, specifically by 'threatening' petitioner with two more days of inpatient incarceration unless he agreed to some amicable resolution." Appellant's Brief at 12.[5] Appellant's argument is unavailing.

This Court provided the following concise overview of the applicable law in ***J.M.Y.***:

> [P]revailing case law has interpreted 18 Pa.C.S. § 6111.1(g) as providing no opportunity to obtain expungement of a mental health record pursuant to a commitment under section 303 and only allows for a trial court to review commitments under section 302. ***In re [Kevin] Jacobs***, 15 A.3d 509, 511 (Pa. Super. 2011). In addition, an appellant seeking expungement and restoration of firearms rights cannot "bootstrap" review of a section 303 commitment to a petition seeking review of a section 302 commitment under section 6111.1(g), because the section 303 commitment is "an entirely separate judicial proceeding, complete with its own avenue of appeal." ***Id.***

> The law in Pennsylvania is "well-settled that involuntary civil commitment of mentally ill persons constitutes deprivation of liberty and may be accomplished only in accordance with due process protections." ***In re Hutchinson***, 454 A.2d 1008, 1010 (Pa. 1982); ***In re Chiumento***, 688 A.2d 217, 220 (Pa. Super. 1997). "The very nature of civil commitment ... entails an extraordinary deprivation of liberty.... A statute sanctioning such a drastic curtailment of the rights of citizens must be narrowly,

---

[5] Appellant also contends that the "the stipulation was coerced by the agency creating the absence of the police officer by not subpoenaing him and then using his absence as the basis for requesting continuance to get another two days [of] incarceration out of petitioner[.]" Appellant's Brief at 14. Appellant does not support this accusation with citation to any evidence that demonstrates that the agency intentionally created the officer's absence in order to keep Appellant under inpatient commitment, and our review of the record reveals none.

even grudgingly construed, in order to avoid deprivations of liberty without due process of law." ***In re Woodside***, 699 A.2d 1293, 1298 (Pa. Super. 1997) (quoting ***In Re S.C.***, 280 Pa.Super. 539, 421 A.2d 853, 857 (1980)).

\* \* \*

As we ultimately held in ***In re Ryan***, [784 A.2d 803, 808 (Pa. Super. 2001]), when an appellant's due process rights under the MHPA are violated, "we may vacate the certification for involuntary treatment pursuant to section [ ]303, and direct that all records pertaining to this matter be expunged." ***[Id.] See also In re A.J.N.***, 144 A.3d 130, 139 (Pa. Super. 2016) (stating that "case law uniformly mandates expungement and destruction of records when the procedural, due process requirements of the MPHA are violated during a commitment proceeding"). Thus, only a section 303 commitment that provides adequate due process may preclude an expungement of a section 302 commitment.

***In Re: Petition of J.M.Y.***, 179 A.3d at 1143-44.

In ***J.M.Y***, the University of Pittsburgh police brought the appellant to the hospital after he attempted to harm himself after becoming intoxicated at a fraternity party while taking prescribed medication for depression and anxiety. He was committed under Section 302 and discharged from the hospital 4 days later. He continued his studies of law enforcement at the University. In November 2014, the appellant petitioned to vacate his Section 302 commitment and expunge his mental health commitment records. The trial court denied his petition because his commitment had been extended by a Section 303 certification.

On appeal, J.M.Y. asserted a due process violation because he had not been aware that there had been a Section 303 hearing. This Court ultimately agreed and concluded that the trial court erred in finding that the Section 303

certification was valid. *Id*. at 1148. Sitting *en banc*, we observed that the evidence showed that the appellant had been unaware that any Section 303 commitment hearing had been requested or held, and the certified record reflected that Appellant did not attend the hearing. *Id*. at 1146. The Court also observed that at Appellant's expungement hearing, an officer from the University police department testified that he did not appear at a Section 303 commitment hearing for the appellant and could not recall if he was ever informed that such a hearing was to be held. *Id*. In addition, we noted that the appellant had not signed the Section 303 certification, no evidence showed the appellant knew of his right to appeal under Section 303(g), no evidence showed the appellant knew of his continuing right to an attorney, and no evidence showed that the appellant had been served a copy of the Section 303 commitment certification. The Court concluded that "[t]hese failures amount to a deprivation of [the a]ppellant's due process rights" and found the Section 303 certification, thus, invalid. *Id*. at 1147.

*J.M.Y.* is factually and procedurally inapposite to Appellant's case. As the trial court here observed:

> The testimony of [Appellant] on February 20, 2018, belies any argument that his records should be expunged based on a denial of due process in connection with his Section 303 agreement. He was provided with the application for Section 303 treatment, as was his counsel. He was ably represented by his private counsel and was fully informed of the consequences of his stipulation and extended treatment, negotiated by his lawyer and the mental health department's lawyer. . . .

> [Unlike in ***J.M.Y.***, ***supra***,] in our case, [Appellant] testified that he was fully aware that a 303 hearings was to take place, obtained representation by private counsel of his choosing, went to the hearing with his counsel, and then negotiated, through his private counsel, to be released that day and undergo outpatient treatment under court supervision by a mental health provider of his choosing (his own mental health doctor with whom he had been treating for six months) and, thus, avoided a further proceedings that could have resulted in twenty days of inpatient treatment.
>
> . . . In this case, the evidence shows that this court did not abuse its discretion. This court applied the law that agreed or stipulated orders are not appealable; recognized that [Appellant] was not appealing *nunc pro tunc* and presented no evidence thereon; applied the law that an agreed upon order cannot be attacked except upon pleading and presenting clear and convincing evidence of fraud[,] accident or mistake, which [Appellant] utterly failed to do because there was none; and, applied the binding precedent of ***In re Kevin Jacobs***, ***supra***.
>
> It is clear, as his parents and business partner, along with police officer concluded, that [Appellant] was in need of treatment when he was first committed. Unlike the facts in ***J.M.Y.***, it is likewise clear that [Appellant] was represented by competent counsel at his section 303 hearings and was provided with the protections required before he stipulated to receive extended outpatient treatment [pursuant to Section 303]. Fundamental fairness was not violated.

Trial Court Opinion, dated 8/17/18, at 15-17.

Our review of the record supports the trial court's analysis. Appellant received notice of the Section 303 hearing, attended the Section 303 hearing with his privately-retained counsel, and acknowledged that his counsel had apprised of him of his rights prior to entering into the Stipulation supporting the Section 303 certification. Appellant was afforded, and fully availed himself, of all due process required in connection with the Section 303

- 9 -

commitment proceeding and subsequent certification.[6]  Accordingly, the trial court did not err or abuse its discretion in finding the Section 303 certification to be valid.  This first issue, thus, warrants no relief.[7]

In the second issue, Appellant asserts that the trial court erred in concluding that the Section 303 Stipulation precluded Appellant from appealing, "even if timeliness were not indicate [sic] involved."  Appellant's Brief at 16-17.  Because Appellant failed to develop this issue, we are unable to provide meaningful review.  This issue is, thus, waived.

Our Pennsylvania Rules of Appellate Procedure and our case law provide the well-established requirements for preserving a claim for appellate review.  *See* Pa.R.A.P. 2111-2119 (discussing required content of appellate briefs and

_____

[6] Despite knowing of his right to appeal the Section 303 certification, Appellant did not partake in that process.  Rather, he **now** attempts to argue that he was coerced into entering the Stipulation so the Section 303 certification is invalid and implies that review is, thus, now available.  *See* Appellant's Brief at 12.  We disagree.  As noted above, the trial court found that Appellant was not "coerced" into entering the stipulation. Moreover, *nunc pro tunc* relief is permitted only when, *inter alia*, there was fraud or a breakdown in the operations of the court.  ***Vietri ex rel. Vietri v. Delaware Valley High School***, 63 A.3d 1281, 1284 (Pa. Super. 2013).  Appellant's entering into a counseled stipulation does not represent fraud or a breakdown in the court's operation which would render his certification now appealable.

[7] We are not persuaded by Appellant's contention that he was unaware that the certification had been granted because he did not receive a copy of the Section 303 certification following the proceeding.  He and his counsel were at the hearing with the MHRO and fully aware when they entered the Stipulation that he was agreeing to the extension of treatment that had been requested pursuant to Section 303.

addressing specific requirements of each subsection of brief on appeal). An appellate court will address only those issues properly presented and developed in an appellant's brief as required by our Rules of Appellate Procedure, Pa.R.A.P. 2101. Where defects in a brief "impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007). *See also Commonwealth v. Williams*, 732 A.2d 1167, 1175 (Pa. 1999) (recognizing "the unavailability of relief based upon undeveloped claims for which insufficient arguments are presented on appeal"); *Commonwealth v. McDermitt*, 66 A.3d 810, 814 (Pa. Super. 2013) (stating "[i]t is a well settled principle of appellate jurisprudence that undeveloped claims are waived and unreviewable on appeal." (citation omitted)). As this Court has made clear, we "will not act as counsel and will not develop arguments on behalf of an appellant." *Hardy*, 918 A.2d at 771.

In support of this issue, Appellant presents a two-paragraph "argument" comprised of conclusory, self-serving statements with no citation to the record or legal authority, and no legal analysis. We are, thus, unable to provide meaningful review. Accordingly, Appellant has waived this second issue.

In the argument purporting to correspond to his third issue, Appellant avers that the court should not have relied on *In re Kevin Jacobs*, 15 A.3d 509 (Pa. Super. 2011), to find that expungement of his Section 303

commitment was not available to him under 18 Pa.C.S. § 6111.1(g).[8]  He boldly contends that **Jacobs** "should be overturned" because it wrongly construed the relevant statutes when it concluded that a Section 303 commitment is a separate and distinct proceeding from a Section 302 commitment.  Appellant's Brief at 18.  He avers that the Section 6111.1(g) expungement provision should, thus, apply equally to allow review of both Section 302 and 303 certifications.  **Id**.  Finally, without citation to any case law or other legal authority, Appellant contends that applying his version of the construction of the MHPA "eliminates the current conflict which has been resulting in such varied panel decisions[.]"  **Id**.  Appellant's argument is without foundation and undeveloped.  It is, therefore, waived.

---

[8] In **In re Jacobs**, **supra**, this Court ruled that 18 Pa.C.S. §6111.1(g) provides no opportunity to obtain expungement of mental health records pursuant to a commitment under Section 303.  "This undoubtedly reflects the fact that commitment under § 7303 indicates a more serious mental [health] problem, and the fact that commitment under § 7302 only requires a doctor's determination, while commitment under § 7303 imposes major due process requirements." **Id**. at 511. **See also In re Keyes**, 83 A.3d 1016 (Pa. Super. 2013) (applying **Jacobs** and noting that Section 6111.1(g) provides no mechanism for expungement of a Section 303 extended involuntary emergency treatment certified by a mental health review officer if the Section 303 ruling was not vacated by the court of common pleas.). **Jacobs** is binding precedent. "This panel is not empowered to overrule another panel of the Superior Court." **Commonwealth v. Beck**, 78 A.3d 656, 659 (Pa. Super. 2013). **See also Sorber v. American Motorists Insur. Co.**, 680 A.2d 881, 882 (Pa. Super. 1996) (observing that "[a]s long as the [Superior Court] decision has not been overturned by our Supreme Court, it remains binding precedent").

Appellant does not provide any indication of what authority would allow this panel to "overturn" a prior Superior Court Opinion. Appellant also fails to cite any authority pertaining to statutory construction that would enable this Court to consider his alternative application of Section 6111.1(g). Finally, he fails to provide any case citations in support of his claim that there is a "current conflict" in Superior Court decisions regarding the application of the expungement statute and review of Section 302 and 303 commitments. These glaring omissions render this issue waived. *See* Pa.R.A.P. 2111, 2119(a) (requiring that an appellant provide argument in his brief with citation to "pertinent" authority); **Hardy**, **supra** (where defects in a brief prevent meaningful review, the issue may be found waived).

Having concluded Appellant's issues are without merit and waived, we affirm the trial court's Order denying Appellant's Petition for expungement of his mental health commitment records.

Order affirmed.

President Judge Emeritus Stevens joins the Opinion.

Judge Olson concurs in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/19

- 13 -