J-S09003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: C.J., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: M.S., MOTHER | |
| | No. 2499 EDA 2016 |

Appeal from the Order July 18, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0001373-2016

BEFORE:  SHOGAN, STABILE, and PLATT,* JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 29, 2017**

Appellant, M.S. ("Mother"), appeals from the order entered on July 18, 2016, adjudicating her daughter, C.J. ("Child"), born in April of 2001, dependent under section 6302(1) of the Juvenile Act, 42 Pa.C.S. §§ 6301-6375.  The order committed Child to the legal custody of the Philadelphia Department of Human Services ("DHS"), with physical placement of Child in foster care with her maternal cousin ("Cousin").  The order also provided that Mother was to have supervised weekly visits with Child.  Additionally, the order stated that Mother was referred to Behavioral Health Services ("BHS") for family therapy, and she was referred for domestic violence and

_____

* Retired Senior Judge assigned to the Superior Court.

parenting classes through Achieving Reunification Center ("ARC") or another appropriate facility. After careful review, we affirm.

In its original opinion filed on August 25, 2016, the trial court provided the following factual background and procedural history:

> The family in this case became known to DHS on June 7, 2016, when DHS received a General Protective Services ("GPS") report alleging inappropriate sexual behavior towards Child by B.S., Mother's paramour ("Paramour"). Mother and Paramour have a history of domestic violence.
>
> Child was fearful of returning to the home of Mother and Paramour. Child instead remained in the home of S.J., her maternal aunt ("Aunt"). On June 9, 2016, DHS visited Child in Aunt's home. Child informed DHS that Paramour had kissed Child on the lips, and that she felt uncomfortable and did not wish to return to the home. DHS developed a Safety Plan which allowed Child to remain in Aunt's home.
>
> On July 6, 2016, Aunt contacted DHS and informed DHS that due to an altercation between Mother and Aunt, Aunt no longer wanted to keep Child or abide by the safety plan. Child told DHS she was fearful and did not want to return to Mother's home. Child did not feel safe there because of the domestic violence, and did not believe Mother could protect her. DHS obtained an Order of Protective Custody ("OPC") temporarily committing Child to DHS custody. DHS placed Child with S.D., her maternal cousin ("Cousin").
>
> On July 8, 2016, a Shelter Care hearing was held. Mother did not attend, but was represented by her court-appointed counsel Nghi Duong Vo, Esq. At this hearing the court lifted the OPC and ordered the temporary commit[ment] to stand. The court also issued an order that Paramour was to stay away from Child.
>
> Following a pre-hearing conference, an Adjudicatory Hearing was held on July 18, 2016. Mother was present, and had hired private counsel. The court vacated Mr. Vo [as counsel,] and David Lehman, Esq. entered his appearance as private counsel for Mother. (N.T. 7/18/16, pgs. 3-5). Counsel

for all parties took a sidebar at the start of the hearing to discuss an agreement [that was] worked out during the pre-hearing conference. (N.T. 7/18/16, pgs. 5-6). The parties, including Mother's private counsel, agreed that Child would be adjudicated dependent on the basis of present inability. (N.T. 7/18/16, pgs. 6, 11). Mother was referred for domestic violence counselling, parenting classes and family therapy. She was given weekly supervised visits with Child. (N.T. 7/18/16, pgs. 7-8). Mother's counsel stipulated that if called to testify, DHS's witnesses would testify to the facts alleged in the dependency petition. (N.T. 7/18/16, pg. 10). The court then adjudicated Child dependent by agreement and on the grounds of present inability, finding it was against the health, safety and welfare of Child to return to Mother's home. The temporary commit to DHS was lifted and Child was fully committed to DHS custody. The court reiterated that counsel had stipulated to the facts in the petition, but not their veracity. (N.T. 7/18/16, pgs. 11-12).

On August 2, 2016, Mother filed this *pro se* appeal of Child's adjudication.[1]

[1] Mr. Lehman is still Mother's counsel of record, and to the trial court's knowledge has not requested or moved to withdraw as counsel. Mother still filed her appeal *pro se*.

Trial Court Opinion, 8/25/16, at 1-2 (footnote in original). ***See also*** Trial Court Supplemental Opinion, 10/6/16, at 1-2.

Mother originally filed a *pro se* concise statement of errors complained of on appeal pursuant to Pa.R.A.P 1925(a)(2)(i) and (b) with her notice of appeal. In its initial Pa.R.A.P. 1925(a) opinion responding to Mother's *pro se* concise statement of errors complained of on appeal, the trial court framed Mother's issues as follows:

1. There were no safety issues present during the time [Child] ran away and the sexual abuse allegation was unfounded during the DHS investigation which cancels DHS's reason for an open case.

2. My rights to due process were violated and/or the court order agreement was violated by DHS as my visits that are court ordered were terminated.

3. The Order of Protection of Custody [sic] is invalid due to the reasons state [sic] of sexual abuse being unfounded by the court, and being over 1 year old.

4. I seek to appeal and terminate the Order of Protection [sic] of Custody, and the Order of Dependency.

[Mother's *Pro Se* Concise Statement of Errors Complained of on Appeal, 8/2/16, at 1].

For the purposes of this appeal, these issues will be consolidated into an appeal of the nonoccurrence of court-order [sic] visits, an appeal of the OPC and an appeal of the Adjudication of Dependency.

Trial Court Opinion, 8/25/16, at 2-3.

Regarding Mother's *pro se* challenges to the visitation provided in the order on appeal and to the OPC, the trial court stated as follows:

Mother alleges that her court-ordered weekly supervised visitation has not been occurring. This is not an actual legal objection to an order of the court. The non-occurrence of court-ordered visitation may give Mother cause to begin a contempt proceeding against the party which allegedly violated the trial court's order. It does not state a cognizable claim of error by the trial court, as required by Pa.R.A.P. 1925(b)(4). The trial court ordered that Mother was to have weekly visits, supervised by the agency. (N.T. 7/8/16, pg. 11). Mother's appeal of the non-occurrence of court[-]ordered visitation should be dismissed.

Mother appeals the Order of Protective Custody granted on July 6, 2016. As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. *In re Duran*, 769 A.2d 497 (Pa. Super. 2001). "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or

effect." ***Johnson v. Martofel***, 797 A.2d 943, 946 (Pa. Super. 2002); ***In re T.J.***, 699 A.2d 1311 (Pa. Super. 1997).

> The OPC and temporary commit[ment] were granted on July 6, 2016. Following a Shelter Care Hearing on July 8, 2016, the OPC was lifted and the temporary commit to DHS was ordered to stand. On July 18, 2016, the court adjudicated Child dependent, lifting the temporary commit and fully committing Child to DHS custody. (N.T. 7/18/16, pg. 11). The OPC was lifted on July 8, 2016, and when Child was adjudicated dependent, the temporary commitment of the Shelter Care order was superseded by the full commitment. No court could enter an effective order lifting the OPC or the temporary commit[ment] because they had already been lifted. Mother's appeal of the OPC is moot and should be dismissed.

> \* \* \*

> For the aforementioned reasons, Mother's appeal of the non-occurrence of visitation and appeal of the OPC do not present actual appealable issues, and should be dismissed.

Trial Court Opinion, 8/25/16, at 3-5.

Finally, the trial court set forth its reasons for adjudicating Child dependent as follows:

> Mother argues that the trial court erred in adjudicating Child dependent. A child is dependent if the court determines, by clear and convincing evidence, that the child is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." 42 Pa.C.S.A. §6302(1). This is commonly called an adjudication on the grounds of "present inability". Clear and convincing evidence has been defined as the testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. ***In re C.R.S.***, 696 A.2d 840, 843 (Pa. Super. 1997). The purpose of the Juvenile Act is to preserve the unity of the family whenever possible. 42 Pa.C.S.A. §6301(b)(1). Nonetheless a child will be adjudicated dependent when [she] is presently without parental care and the care is not immediately available.

*In re R.T.*, 405 Pa. Super. 156 (1991). The Superior Court has defined proper parental care as the care which is geared to the particularized needs of the child and, at the minimum, is likely to prevent serious injury to the child. *In re C.R.S.*, *supra* at 845.

Mother[], through her privately-retained counsel, agreed to the adjudication on July 18, 2016. (N.T. 7/18/16, pgs. 6, 11). Mother was present during the pre-hearing conference and the adjudicatory hearing, and did not object to the trial court's order adjudicating Child dependent. In fact, Mother agreed to the adjudication in order to receive services and court-ordered visitation. (N.T. 7/18/16, pgs. 7-8). Mother's counsel also stipulated to the facts alleged in the dependency petition. (N.T. 7/18/16, pg. 10). The dependency petition alleged that Paramour, who lives with Mother, had exhibited inappropriate sexual behavior towards Child, after which Mother and Child left the home temporarily. Mother and Paramour have a history of domestic violence, and Paramour had pushed Child during an argument. (Dependent Petition at 5(a)). Child was fearful of Paramour and did not want to return to Mother's home, and Paramour is an alcoholic who becomes violent toward Child when drinking. (Dependent Petition at 5(b)). Child alleged that Paramour kissed her on the lips and that she felt uncomfortable in Paramour's presence. (Dependent Petition at 5(d)). Child did not want to return home because Child did not believe Mother could keep her safe or protect her from Paramour's domestic violence or sexual advances. (Dependent Petition at 5(f)). Mother and Mother's counsel elected to agree to adjudication and stipulate to the facts instead of questioning DHS's witnesses or putting on their own case. (N.T. 7/18/16, pgs. 10-11). Based on the stipulated allegations in the Dependent Petition, Child was fearful and unsafe, and Mother was not able to provide the proper parental care and control necessary to care for Child. The trial court did not hear any contrary testimony. Because the trial court adjudicated Child dependent by agreement, finding clear and convincing evidence, and because Mother stipulated to facts which show that she was presently unable to care for Child, the trial court's adjudication was proper. The trial court did not abuse its discretion.

\* \* \*

The trial court's finding that Child was dependent was proven by clear and convincing evidence and agreed to by

Mother and her privately-retained counsel. The trial court's adjudication of the Child was proper and should be affirmed.

Trial Court Opinion, 8/25/16, at 4-5.

On August 25, 2016, the same date that the trial court entered the Pa.R.A.P. 1925(a) opinion, this Court, *sua sponte*, remanded the appeal to the trial court for thirty days for a determination as to whether the trial court should appoint appellate counsel for Mother, citing 42 Pa.C.S. § 6337. We retained jurisdiction over the appeal and suspended the briefing schedule. Also on August 25, 2016, Child's counsel, Attorney Frank Cervone, withdrew his appearance, and Attorney Jane Kim entered her appearance on behalf of Child.

On September 1, 2016, the trial court appointed Attorney Jeffrey C. Bruch as appellate counsel for Mother. On September 21, 2016, Attorney Bruch filed in this Court a motion to amend Mother's concise statement of errors complained of on appeal.[1] Attorney Bruch alleged that the trial court accepted Mother's counsel's agreement to adjudicate Child dependent, but there was no proof that Mother knowingly, voluntarily, and intelligently entered the agreement, because: 1) Mother was not provided a colloquy about the agreement and 2) Mother's trial counsel was ineffective about informing her about the agreement. Motion to Amend, 9/21/16, at

---

[1] We note that Attorney Bruch mistakenly referred to the document as a Concise Statement of Facts.

unnumbered 2. Further, Attorney Bruch asserted that Mother's trial counsel entered the agreement on behalf of Mother without obtaining the petition with the facts and allegations against Mother so that trial counsel could adequately inform Mother concerning the agreement. *Id*. On September 23, 2016, we granted the motion and directed Attorney Bruch to file an amended Pa.R.A.P. 1925(b) statement by September 30, 2016. We vacated the briefing schedule and directed the trial court to file a supplemental opinion in response to the issues in the amended concise statement.

On September 30, 2016, Attorney Bruch filed an amended Pa.R.A.P. 1925(b) statement. On appeal, Mother raises the following issues for this Court's consideration:

> 1. Did the [t]rial judge rule in error that the Philadelphia City Solicitor's Office meant [sic] its burden of proof that the child should be adjudicated dependent under 42 Pa.C.S. sec. 6302(1)[?]
>
> 2. Did the trial court judge err in accepting the agreement when Mother did not knowingly, [and] voluntarily agree to the adjudication[?]
>
> 3. Did the trial [c]ourt err in granting Mother visitation then DHS or CUA [Community Umbrella Agency] suspending visitation?

Mother's Brief at 3.

As noted by the trial court, Mother was represented by counsel when she filed her *pro se* notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P 1925(a)(2)(i) and (b). Because hybrid representation is not permissible, we will review only the

issues preserved in Mother's amended and counseled concise statement. ***See Commonwealth v. Glacken***, 32 A.3d 750, 752 (Pa. Super. 2011) (citations omitted) ("Pursuant to our Rules of Appellate Procedure and decisional law, this Court will not review the *pro se* filings of a counseled appellant."). We note that in her amended and counseled concise statement of errors complained of on appeal, Mother abandoned the issues raised in her *pro se* concise statement. Moreover, counsel for Mother does not raise the propriety of the Order of Protective Custody ("OPC") in the amended concise statement.

In ***Krebs v. United Refining Company of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006), we held that an appellant waives issues that are not raised in both her concise statement of errors complained of on appeal and the statement of questions involved in her brief on appeal. Further, Mother has not discussed either the occurrence of her visitation or the propriety of the OPC with any authority or supporting argument in her brief on appeal. ***See Chapman-Rolle v. Rolle***, 893 A.2d 770, 774 (Pa. Super. 2006) (stating that a failure to argue and to cite any authority supporting an argument constitutes a waiver of the issue on appeal) (citation omitted). In fact, in her brief, Mother states that her visitation issue can be decided at a permanency review hearing or a contempt hearing, and that the issue on appeal is moot. Mother's Brief at 7-8. Thus, we conclude that Mother has abandoned the issues regarding visitation with Child and the propriety of the

OPC. Therefore, two interrelated issues remain for this Court's consideration: the validity of the adjudication agreement entered into by the parties and the sufficiency of the evidence DHS presented at the adjudicatory hearing.

Mother argues that the trial court erroneously accepted the parties' agreement of adjudication without conducting an on-the-record examination and colloquy of Mother. Mother relies on *Boykin v. Alabama*, 395 U.S. 238 (1969), and asserts that the United States Supreme Court held that when a defendant gives up constitutional rights and pleads guilty, the waiver and guilty plea must be knowingly, voluntarily, and intelligently entered. Mother claims that she did not indicate to the court that she knowingly, voluntarily, and intelligently agreed to give up her right to a hearing and an opportunity to confront the witnesses. Mother concedes that *Boykin* was a criminal case, but she argues that the principle announced in that case should be applicable to dependency matters as well. Mother's Brief at 7.

In her related argument, Mother contends that, because the trial court relied on the parties' adjudication agreement, the trial court erroneously ruled that DHS met its burden of proof with regard to showing Child was dependent under section 6302(1) to support the adjudication. After review, we conclude that Mother's claims of error do not entitle her to relief.

The Pennsylvania Supreme Court recently set forth our standard of review in a dependency case as follows:

"The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *In re R.J.T.*, 608 Pa. 9, [27], 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion[.]

*In Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015).

Section 6302 of the Juvenile Act defines a "dependent child" as

follows:

**"Dependent child."** A child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302.

In *In re G., T.*, 845 A.2d 870 (Pa. Super. 2004), this Court clarified

the definition of "dependent child" further:

The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

*Id.* at 872 (internal quotations and citations omitted); *see also In re J.C.*,

5 A.3d 284, 289 (Pa. Super. 2010). Additionally, we note that "[t]he burden

of proof in a dependency proceeding is on the petitioner to demonstrate by

clear and convincing evidence that a child meets that statutory definition of dependency." ***G., T.***, 845 A.2d at 872.

With regard to a dependent child, in ***In re D.A.***, 801 A.2d 614 (Pa. Super. 2002) (*en banc*), this Court explained:

> A court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

***Id.*** 801 A.2d at 617.

Regarding the disposition of a dependent child, section 6351(e), (f), (f.1), and (g) of the Juvenile Act provide the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection, and physical, mental and moral welfare of the child.

Section 6351(e) of the Juvenile Act provides in pertinent part:

**(e) Permanency hearings.—**

> (1) [t]he court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child. In any permanency hearing held with respect to

the child, the court shall consult with the child regarding the child's permanency plan in a manner appropriate to the child's age and maturity. . . .

(2) If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child has been adjudicated dependent, the court shall then determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the child's parent, guardian or custodian or to preserve and reunify the family shall be made or continue to be made and schedule a hearing as provided in paragraph (3).

* * *

42 Pa.C.S. § 6351(e).

Section 6351(f) of the Juvenile Act prescribes the pertinent inquiry for the reviewing court:

**(f) Matters to be determined at permanency hearing.-**

At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5)     The likely date by which the placement goal for the child might be achieved.

(5.1)     Whether reasonable efforts were made to finalize the permanency plan in effect.

(6)     Whether the child is safe.

(7)     If the child has been placed outside the Commonwealth, whether the placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child.

* * *

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

> (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

> (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

> (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

* * *

**(f.1) Additional determination. –** Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

J-S09003-17

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(3) If and when the child will be placed with a legal custodian in cases where return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(4) If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(5) If and when the child will be placed in another living arrangement intended to be permanent in nature which is approved by the court in cases where the county agency has documented a compelling reason that it would not be best suited to the safety, protection and physical, mental and moral welfare of the child to be returned to the child's parent, guardian or custodian, to be placed for adoption, to be placed with a legal custodian or to be placed with a fit and wiling relative.

**(f.2) Evidence. –** Evidence of conduct by the parent that places the health, safety or welfare of the child at risk, including evidence of the use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk, shall be presented to the court by the county agency or any other party at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency.

**(g) Court order. – On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or**

- 15 -

**other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.**

\* \* \*

42 Pa.C.S. § 6351(f-g) (some emphases added).

In its supplemental opinion, the trial court addressed the issues raised in Mother's amended Pa.R.A.P. 1925(b) statement as follows:

> Mother argues on appeal that she did not knowingly and voluntarily enter into the agreement to adjudicate Child dependent. Issues that were not raised at the trial court level are waived on appeal.

> "It is axiomatic that, in order to preserve an issue for review, litigants must make timely and specific objections during trial. . . ." *In re R.P.*, 957 A.2d 1205, 1222 (Pa. Super. 2008) (citations omitted); Pa.R.A.P. 302(a). The trial court has the power to accept or reject agreements and stipulations. Following its acceptance of stipulations, the court may hear additional testimony as necessary to rule on a Petition for Adjudication of Dependency. Pa.R.J.C.P. 1405. A stipulation to adjudicate, on its own, is not sufficient for the court to adjudicate a child dependent. Rather, the court must hear enough facts regarding adjudication to come to an independent determination. *In Interest of Michael Y.*, 530 A.2d 115, 118 (Pa. Super. 1987).

> Mother has not preserved this issue for review. Neither she nor her privately-retained counsel objected to the adjudication of dependency. In fact, both Mother and her counsel agreed to the adjudication, and stipulated to Mother's present inability to care for Child. (N.T. 7/18/16, pg. 11). Mother's claim of error was waived.

> Addressing the substance of Mother's claim, the trial court in this case did not accept the agreement of the parties as conclusive. The court took testimony and attorney's representation about Child's needs, safety and allegations of sexual abuse, domestic violence and physical violence against Child. (N.T. 7/18/16, pgs. 6-11). The parties stipulated that if called to testify, DHS's witness would testify to the facts alleged

in the dependency petition. (N.T. 7/18/16, pgs. 10-11). The trial court adjudicated Child dependent only after this stipulation to the facts was made. (N.T. 7/18/16, pgs. 11-12). These stipulated facts included allegations of sexual abuse and physical violence. As a result the trial court referred Child to trauma therapy. (N.T. 7/18/16, pgs. 10-11). Mother participated in a pre-hearing conference with her privately-retained counsel where these issues were discussed at length. (N.T. 7/18/16, pgs. 5-6). At no point during the hearing did she or her counsel object - in fact they stipulated both to the adjudication and to facts sufficient to support the trial court's independent determination that Child was dependent. (N.T. 7/18/16, pg. 10). The court heard no evidence that Mother was not voluntarily entering into this agreement. The court even engaged Mother directly to confirm her address. Mother confirmed her address and did not ask any further questions or give any indication that she disagreed with the court-ordered services or adjudication. (N.T. 7/18/16, pg. 9). Furthermore, Mother and her attorney had a second chance to engage the court, when Mother provided a second address for a house which may [be] used for future reunification. (N.T. 7/18/16, pgs. 12-13). Again, Mother did not show any indication that she disagreed with any services or the adjudication. Mother's attorney also asked the court to modify visitation as discussed by the parties, which the court so ordered. (N.T. 7/18/16, pg. 9). In fact, Mother entered into the agreement in order to receive services: domestic violence classes, family therapy and parenting classes. (N.T. 7/18/16, pgs. 7-8). There is no requirement that the trial court colloquy parties before accepting their agreement and any stipulations. Given that Mother was represented by counsel of her choice and had attended a pre-hearing conference, there is no reason to believe that Mother did not understand and voluntarily agree to stipulate, fully understanding the consequences. As a result, the trial court did not abuse its discretion in accepting Mother's agreement and stipulation both to the adjudication and to the facts which clearly and convincingly supported that adjudication.

Mother also alleges that her privately-retained counsel at trial was ineffective. A finding of ineffective assistance of counsel can be grounds for a new trial. In dependency proceedings, the appellant must make a "strong showing" of ineffectiveness of counsel. *In re S.M.*, 614 A.2d 312, 316 (Pa. Super. 1992). This must go beyond mere assertion of

ineffectiveness. The [a]ppellant must demonstrate actual prejudice to its case, and must show that if counsel had exercised "a more perfect stewardship" the result in the case would have been different. In practice this means that the appellant must show that had appellant been given diligent counsel, the petitioning party would not have been able to carry its burden of clear and convincing evidence, and the court would have ruled in favor of the appellant's interests. ***In re Adoption of T.M.F.***, 573 A.2d 1035, 1044 (Pa. Super. 1990) (en banc) (plurality). The standard for ineffective assistance of counsel is the same in dependency, termination and goal change proceedings: "the appellant must show by clear and convincing evidence that it is more likely than not that the result would have been different, absent the ineffectiveness." ***In re K.D.***, 871 A.2d 823, 829 (Pa. Super. 2005).

At the adjudicatory hearing, Mother's court-appointed counsel was vacated and her privately-retained counsel entered his appearance. (N.T. 7/18/16, pgs. 3-4). Mother and Mother's private counsel participated in a pre-hearing conference with all parties prior to the hearing, and proceeded to agree to the adjudication. (N.T. 7/18/16, pg. 6). Mother's counsel then stipulated to the facts alleged in the dependency petition. (N.T. 7/18/16, pgs. 10, 11). This stipulation was made in order to complete an uncontested hearing expeditiously - it simply meant that DHS's witness would not have to orally testify. If Mother's counsel had not stipulated, DHS's witness would simply have orally testified to the exact same facts. Mother's trial counsel did not call Mother as a witness, or provide any evidence, but Mother on appeal has not presented any evidence which Mother's trial counsel could have used to strengthen her position. Stipulating to a report when the contents of that report had been thoroughly discussed in a pre-hearing conference does not show imperfect stewardship by Mother's trial counsel. Mother's trial counsel was present and participated actively in the hearing, ensuring that Mother's correct address be on the record for eventual reunification, and asking the court for visitation modification which had been agreed to by the parties. (N.T. 7/18/16, pgs. 9-10, 12-14). On appeal, Mother has not provided any evidence which would have altered the trial court's determination if it had been available at the adjudicatory hearing. For this reason, Mother has not carried her burden of proof regarding a claim of ineffective assistance of counsel. The trial court's ruling was proper and should be affirmed.

Conclusion:

> For the aforementioned reasons, Mother's amended appeal of her voluntary agreement to adjudication and her allegations of ineffective assistance of counsel should be dismissed. The trial court's adjudication of the Child was proper and should be affirmed.

Trial Court Supplemental Opinion, 10/6/16, at 3-6.

We discern no abuse of discretion or error of law in the trial court's recommended disposition of Mother's issues on appeal, and we agree with the trial court's rationale that Mother's claims of error are either waived or meritless. Mother has not set forth any statutory basis or case law in her brief imposing a requirement that a trial court conduct an on-the-record colloquy of a parent in a dependency case where the parent has reached an agreement through her counsel.

Moreover, we decline Mother's request to apply the holding from **Boykin**, a criminal case, to this dependency matter. "In a dependency case, the liberty interest of appellant is not at stake and the risk of erroneous adjudication is so substantially mitigated by safeguards, reviews and procedures directed toward uniting the family, that due process requires a less didactic approach than in criminal procedures." **In the Matter of J.P.**, 573 A.2d 1057, 1061 (Pa. Super. 1990). "Essentially, the theme espouses the principle that in delinquency, dependency or adoption cases involving children, the constitutional provisions, rules and laws designed to govern proceedings in adult criminal or civil actions are not necessarily applicable or

desirable." *Id*. at 1062. Bearing these principles in mind, we point out that unlike a criminal case where a defendant enters a guilty plea and is sentenced, an adjudication of dependency is subject to further scrutiny in permanency review hearings

For the reasons set forth in the trial court's August 25, 2016 opinion, and its October 6, 2016 supplemental opinion, we conclude that Mother is entitled to no relief. Accordingly, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2017